No. 20711.

GORDON BURR *v*. GREEN BROS. SHEET METAL INC., ET AL.
(409 P.2d 511)

Decided January 10, 1966.

Rogers, McClain and Brown, for plaintiff in error.

Duane O. Littell, Joseph R. Quinn, for defendants in error.

*In Department.*

Opinion by Mr. Justice Schauer.

The parties appear here in the same order in which they appeared in the trial court. They will be referred to as they there appeared, as plaintiff and defendants, or by name.

Plaintiff brought suit for damages in the amount of $99,924. This sum included damages for physical injuries sustained in an accident on October 21, 1960, and resultant medical and hospital expenses and compensation for loss of wages. Trial was had to a jury which returned its verdict for defendants and judgment was entered on the verdict. Plaintiff prosecutes this writ of error.

In his complaint plaintiff alleges that on the date of

the accident he was employed as a stone mason, or calker, on a scaffold elevated some thirty feet above the ground on the west side of the Denver University Law Center, in Denver. That defendant, Oliver J. Watson, was driving a pickup truck owned by his employer Green Bros. Sheet Metal, Inc., and that Watson negligently, carelessly and recklessly, and contrary to ordinances of the City and County of Denver, parked and left his truck in the alley at the rear of the building upon which plaintiff was working. Upon returning to his truck Watson observed, or in the exercise of ordinary care and caution should have observed, plaintiff and another stone mason working with him engaged in their work on the elevated scaffold above the vehicle; and observed, or should have observed, that the ropes from the scaffolding were hanging from the side of the building near Watson's truck. Further, that notwithstanding these facts, Watson entered his truck and negligently and carelessly maneuvered the vehicle back and forth in such a manner that the truck became entangled in the ropes from the scaffolding. That Watson thereupon negligently and carelessly drove his vehicle away with such force that it pulled down the scaffolding, thereby causing plaintiff and his co-worker to fall to the ground in the alley, and resulting in the injuries and damages complained of.

In their answer defendants deny all material allegations of the complaint, except the corporate status of Green Bros., and allege affirmatively that plaintiff's injuries, if any, were the result of the contributory negligence of plaintiff, and that plaintiff had assumed the risk involved under the existing conditions.

No issue is raised in this writ of error as to the extent of plaintiff's physical injuries or the damages he sustained. The grounds urged by plaintiff for reversal concern procedural and evidential matters which arose during the course of the trial. Plaintiff's arguments will be

separately discussed in the order in which they are presented in his brief.

## I.

THE COURT ERRED IN PERMITTING COUNSEL FOR THE DEFENDANTS TO CROSS-EXAMINE AND PROPOUND LEADING QUESTIONS TO ONE OF HIS CLIENTS, OLIVER J. WATSON, AFTER SUCH PARTY HAD BEEN CALLED FOR CROSS-EXAMINATION UNDER THE RULES BY PLAINTIFF.

Plaintiff first called Watson for cross-examination as an adverse witness under R.C.P. Colo. 43(b). After plaintiff's counsel had concluded their cross-examination, Watson's counsel asked permission of the court to cross-examine his own client and was permitted to do so over the objection of plaintiff. Defendants' counsel propounded leading questions to his client, Watson, during such cross-examination on the subject matter of plaintiff's cross-examination in chief. This procedure was followed pursuant to Rule 43(b), which reads in pertinent part as follows:

"(b) *Scope of Examination and Cross-Examination.* A party may interrogate any unwilling or hostile witness by leading questions. A party may call an adverse party * * *, and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party, *and the witness thus called may be contradicted and impeached by or on behalf of the adverse party also, and may be cross-examined by the adverse party only upon the subject matter of his examination in chief.*" (Emphasis supplied.)

Watson, as an adverse witness, was cross-examined in detail by plaintiff's counsel as to all the facts and circumstances surrounding the accident. Leading questions were asked and plaintiff's counsel attempted to impeach him by quoting his former answers given in a deposition and other former statements. There was no detail of this examination in chief upon which Watson was not subject to cross-examination by the use of lead-

ing questions by his own counsel under the provisions of the rule cited. Counsel for defendant interrogated Watson regarding many of the details covered by plaintiff's examination in chief which served to clarify the testimony.

█ The pertinent portion of Rule 43 (b), R.C.P. Colo., is identical with Rule 43 (b) of the Federal Rules of Civil Procedure, which has been construed by federal courts. When the plaintiff calls the defendant for cross-examination, the defendant's counsel may then cross-examine such defendant upon the subject matter of his examination in chief, by leading questions or otherwise. Such cross-examination by defendant's counsel is expressly authorized by the rule cited and has been approved by this court in the case of *Van Hise v. Trino,* 143 Colo. 179, 352 P.2d 284 (1960). Cases from other jurisdictions, including the federal courts, which support the ruling of the trial court are cited by the defendants in their answer brief. One such case has been adjudicated by the Supreme Court of North Dakota, which state has a rule identical to our Rule 43 (b). *Lindsay, et al. v. Teamsters Union, Local No. 74,* 97 N.W.2d 686 (N.D. 1959).

In *American Fidelity & Casualty Company v. Drexler,* 220 F.2d 930, the Fifth Circuit Court of Appeals construed Rule 43 (b) in a manner identical to the construction placed on it by this court in *Van Hise v. Trino, supra,* stating:

"Appellant Bell was placed on the stand by the plaintiff at the beginning of the case under Rule 43 (b), Federal Rules of Civil Procedure, and was cross-examined fully on the circumstances surrounding the accident. At the conclusion of the cross-examination by plaintiff, the court indicated to the jury that Bell would be recalled to the stand by the other parties and examined by them during their part of the case. Whereupon counsel representing all defendants said, 'I would like the record to show that I asked he be tendered to me for

30

cross-examination.' Appellants now urge error on the part of the court in refusing to allow the defendants to cross-examine Bell at the conclusion of the cross-examination by the plaintiff, insisting that Rule 43(b) gives them that right.

"Appellants are correct. Rule 43(b) does give them that right. * * *."

II.

THE COURT ERRED IN ADMITTING INTO EVIDENCE, OVER PLAINTIFF'S OBJECTION, DEFENDANTS' EXHIBIT NO. 2, PROOF OF SUBSEQUENT ALTERATION OF CONDITIONS.

Defendants' Exhibit No. 2 was a photograph taken four days after the accident, showing workmen doing scaffolding work on the building involved using barrels to house the slack rope. This issue arose as a result of the testimony of one Vern Schultheis, president of plaintiff's employer. The witness testified at great length, giving voluminous detail as to the manner in which calking jobs were done by the use of scaffolding, and that he had made frequent visits to this project in order to keep in touch with the progress of the work. Plaintiff had been working on the project about two weeks prior to this accident, using the standard 20-foot scaffold furnished by his employer. At the ground level below the scaffolding the sidewalk extended out beyond the edge of the building. Ten or twelve feet above the sidewalk, and eighteen to twenty feet below the scaffold at the elevation where plaintiff was working at the time of the accident, there is an "overhang" extending out over the sidewalk for approximately four feet.

Schultheis was extensively examined as to the possible use of barrels in which the excess rope might be kept instead of being kept in a coil under the overhang. He stated that it would not be practicable to set barrels under the overhang. The rope, being heavy, three-quarter inch, manila rope, weighing about fifty-two pounds for a 300-foot length would hang straight down

over the edge of the overhang, rather than going into the barrels under the overhang. If barrels were used on a job of this kind, the barrels would necessarily be placed under the overhang as they could not be placed out in the alley. Barrels should never be placed directly under a scaffold because of the chance that cigarettes or other refuse might fall into any rope they might contain. If barrels were used on this project, they must be placed out on either side of the building or in the alley, and the witness further stated that he would not put them in the alley on this job. When asked to state the problem of slack rope in connection with the use of barrels, he replied:

"A   Oh, you can't — when you are up above the barrels — when you are up above, your rope hangs down into the barrels, and unless your barrel is sitting directly under the scaffold, under it where the rope can drop straight into it, it will loop out. If you have your barrels off to the side and your barrel is sitting — when you pull your rope up to tie off your scaffold, you will have excess rope that will loop out and won't — there is no way that it will feed back into the barrel. It is heavy enough that it will just drop straight down from the scaffold, and you will have a worse condition there."

On cross-examination, the witness stated that plaintiff had worked for this company fairly steadily since 1957. The witness also stated that he had last visited the project four days prior to the accident.

Defendants' Exhibit No. 1, a photograph of the accident site taken on October 25, 1960, was admitted in evidence without objection. It shows that the outside edge of the scaffold would be slightly over the curb line of the sidewalk and the rope would hang straight down from the outside edge of the scaffold. A barrel could be placed at the edge of the curb and the rope would drop directly into the barrel, but it would be in the alley. The witness also testified that it is customary, on occasion, to cover the barrel, leaving a hole

in the middle of the cover through which the rope could pass. Theoretically, using this system, there would be no rope on the sidewalk or in the alley. If plaintiff had followed instructions and left the rope coiled underneath the overhang, there would have been no rope near the curb line of the sidewalk.

The plaintiff and his co-worker used no safety line, which is usually attached to the scaffold, wore no safety belts, and there were no warning signs, although the alley was a thoroughfare with lots of traffic, and no barricades were erected. No man was posted to make sure that the rope did not become loose and dangle into the alley, nor were the employees instructed to tie off the ropes to prevent them from dangling above or into traffic. The final question propounded to this witness was as follows:

"Q Now, you checked this job over completely and carefully and concluded that snugly tacking the rope, the loose rope, the seventy-six or eighty feet of loose rope, under the coil would be sufficient without using barrels, didn't you?

"A Yes.

"Q Well, then why did you use barrels after the accident?"

At this point the controversial Defendants' Exhibit No. 2 was offered in evidence, "to impeach this witness and to show that barrels were used contrary to his statement after this accident occurred."

After conference in chambers by the court and counsel, the exhibit was admitted in evidence for impeachment purposes *only,* and the court expressly instructed the jury that it was admitted for the limited purpose of impeaching the testimony of this witness regarding the use of barrels on this job, and not as evidence of any contributory negligence. As above stated, the witness had testified that the use of barrels would be impracticable; that barrels should not be placed directly under a scaffold; that he would not put barrels in the

alley on this job; that you "can't" use barrels to house the slack rope; that the rope would not feed back into a barrel; that the procedure followed on this job would be sufficient without the use of barrels, and had given other reasons which, in his opinion, rendered the use of barrels on this job impracticable.

The exhibit clearly impeached him on these material points, showing, as it did, workmen on the same site four days after the accident, doing scaffolding work and using barrels, both under the overhang and to one side of it, in which to house the slack rope.

The court reviewed the testimony of the witness on these points and pointed out where this testimony was impeached by the exhibit, and admitted the exhibit for impeachment purposes only, permitting the witness to testify further as to the use of the barrels shown on the exhibit on the day the photograph was taken, his apprehension about the use of barrels, and any limitation on the use of the barrels at that time. The witness attempted an explanation but gave only a resume of a part of his former testimony, embellished by other testimony not pertinent to the issue then presented. The case was properly submitted to the jury on this contradictory evidence.

██ It is admitted that it is universally held that evidence of subsequent alterations of conditions is not admissible to prove negligence on the part of defendant. All of the cases cited on this question in plaintiff's brief are addressed to this point. In but one of these cases, *Mitchell v. J. S. Schofield's Sons Co.*, 91 S.E. 275 (Georgia, 1917), did the court hold that this principle applied to rebuttal testimony. We hold, however, that this exhibit was admissible under the theory of impeachment of the witness Schultheis.

III.

THE COURT ERRED IN ALLOWING DEFENSE COUNSEL TO EXCEED THE BOUNDS OF CROSS-

EXAMINATION WHEN INTERROGATING THE WITNESS HERBERT ALIE.

Alie was a witness for plaintiff and testified briefly in his direct examination to the effect that he was in his office on the third floor of the City and County Building in Denver on the morning in question. That he heard loud shouts, looked out of his window and saw plaintiff falling through the air and a vehicle coming down the alley. On cross-examination he was asked if he had observed men working on the scaffolding (where plaintiff was employed) prior to the accident, to which question counsel for plaintiff objected on the ground that it was beyond the scope of the direct examination. The objection was overruled, and the witness testified that about 8:00 A.M., on the morning in question, he had observed men working on the scaffold and ropes hanging down from the scaffolding, and a part of them lying in the alley. The cases cited in the briefs of each of these litigants are to the effect that the order of introducing testimony and the latitude allowed in cross-examination are largely in the discretion of the court and the action of the court will not be reversed in the absence of abuse of discretion.

Plaintiff's counsel had opened up the subject matter of the testimony objected to in his direct examination when the witness was asked whether anything unusual had occurred on the morning in question. This question was the basis of the cross-examination objected to as to the observations of the witness on that occasion. The cases of *Archina v. People*, 135 Colo. 8, 307 P.2d 1083, *Union Deposit Co., et al. v. Driscoll*, 93 Colo. 381, 26 P.2d 815, and *First National Bank v. Shank*, 53 Colo. 446, 128 Pac. 56, set forth the principle that the court has wide discretion in determining the propriety of questions on cross-examination when objection is made thereto on the ground that such questions exceed the scope of the direct examination. The trial court did not abuse its discretion in this case.

## IV.

THE COURT ERRED IN ADMITTING INTO EVI-
DENCE THE TESTIMONY OF THE WITNESS HENRY
WAGNER, INSOFAR AS IT WAS OFFERED TO
PROVE CONTRIBUTORY NEGLIGENCE ON THE
PART OF THE PLAINTIFF AT TIME PRIOR TO
THE OCCURRENCE OF THE ACCIDENT WHEREIN
PLAINTIFF WAS INJURED.

This witness testified that on the day before the acci-
dent he had observed the ropes from the scaffolding
loose in the alley and had called to the men working
on the scaffold to advise them to that effect but re-
ceived no response. Plaintiff bases his argument that
this evidence was not admissible upon those cases which
hold that proof of prior negligence is not admissible to
prove the negligence in question.

Plaintiff had testified extensively as to the sus-
pension of ropes from the scaffold, the manner of han-
dling the ropes, the manner of performing the job in
every detail and that "at no time would the rope ever
be in the alley." We hold that Wagner's testimony was
properly admitted in rebuttal of plaintiff's testimony
given on direct examination wherein he testified con-
cerning the procedure used in handling rope at all times,
and also pertaining to the manner in which the rope
hung from the scaffolding and the location of the rope
with reference to the west wall of the building. These
were material issues and defendants had the right to
contradict plaintiff's testimony in these respects. *Barry
v. People*, 29 Colo. 395, 68 Pac. 274.

The plaintiff was a well experienced man in scaf-
fold work and the problems and dangers incident thereto.
He had received instructions and was well aware of
the safety practices applicable to the circumstances pre-
vailing at the time of the accident. He was bound to
take notice of the special danger existing at the time
of the accident. Under these conditions he had the duty
to exercise the care required of a reasonably prudent

person under like circumstances and his failure so to do fixes his negligence. *Hogue, et al. v. Colorado and Southern Railway Company,* 110 Colo. 552, 136 P.2d 276.

In the case of *Skorey Co. v. Canino,* 142 Colo. 411, 350 P.2d 1069, it is stated:

"\* \* \* contributory negligence does not affect a duty, but embraces an undue risk of harm to oneself. The true measure of conduct required of the plaintiff, is what would an ordinarily prudent person have done under the circumstances as they then appeared to exist. \* \* \* The legal rule of conduct requires that the plaintiff, as well as the defendant, shall act as an ordinarily prudent person would do under like circumstances. \* \* \*."

We find no reversible error in the record in this case. The judgment is affirmed.

Mr. Justice Frantz and Mr. Justice McWilliams concur.