2012 COA 174

Gerald Richard CORDER,
Plaintiff–Appellant,

v.

William R. FOLDS, Jr., Defendant–
Appellee.

No. 11CA1917.

Colorado Court of Appeals,
Div. III.

Oct. 11, 2012.

Fogel, Keating, Wagner, Polidori and Free, P.C., Michael O'Brien Keating, John F. Poor, Denver, Colorado, for Plaintiff–Appellant.

Bayer & Carey, P.C., Teri L. Vasquez, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge ROY.

¶ 1 In this premises liability case, plaintiff, Gerald Richard Corder (the neighbor), appeals from the summary judgment dismissing his complaint against defendant, William R. Folds, Jr. (the landowner). We reverse and remand for further proceedings.

I.  Question Presented

¶ 2 This case presents the question of whether the term "consent," as used in the premises liability act, section 13–21–115, C.R.S.2012 (the Act), includes both express and implied consent. We conclude that it does.

## II. Background

¶ 3 The landowner and the neighbor were next door neighbors. In August 2008, the neighbor entered the landowner's backyard to return a propane tank he had borrowed from the landowner. The neighbor ascended the stairs from the yard to the deck, where he left the propane tank. While the neighbor was descending, the stairs collapsed and he was injured. The landowner was not at home at the time.

¶ 4 The neighbor brought suit against the landowner pursuant to the Act, alleging that he was either an invitee or licensee at the time of his injury and that the landowner failed to exercise reasonable care with respect to a dangerous condition on his property. The landowner filed a motion for determination of law, asserting that the neighbor was a "trespasser" as that term is used in section 13–21–115(5)(c), C.R.S.2012. The trial court agreed with the landowner, and ultimately entered summary judgment in favor of the landowner because there was no evidence suggesting the landowner had injured the neighbor willfully or deliberately, which precluded liability under section 13–21–115(3)(a), C.R.S.2012. This appeal followed.

## III. Standard of Review

### A. Summary Judgment

¶ 5 Our review of an order granting summary judgment is de novo. *See Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.*, 901 P.2d 1251, 1256 (Colo. 1995). Summary judgment is appropriate only if the pleadings, affidavits, depositions, or admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* C.R.C.P. 56(c); *Cung La v. State Farm Auto. Ins. Co.*, 830 P.2d 1007, 1009 (Colo.1992).

¶ 6 The classification of the plaintiff as an invitee, licensee, or trespasser presents a mixed question of fact and law which is addressed to the trial court. *Chapman v. Willey*, 134 P.3d 568, 569 (Colo.App.2006). In reviewing the trial court's ruling, we defer to its findings on credibility and will not disturb its findings of historical fact unless they are clearly erroneous and not supported by the record. *Id.*

### B. Statutory Construction

¶ 7 The construction of a statute presents a question of law that we review de novo. *Ball Corp. v. Fisher*, 51 P.3d 1053, 1056 (Colo.App.2001). Our primary goal in statutory interpretation is to determine and give effect to the intent of the legislature. *Moffett v. Life Care Centers*, 187 P.3d 1140, 1143 (Colo.App.2008) (citing *Colo. Office of Consumer Counsel v. Pub. Utils. Comm'n*, 42 P.3d 23, 27 (Colo.2002)), *aff'd*, 219 P.3d 1068 (Colo.2009). In making such an interpretation, we look first to the plain and ordinary meaning of the statutory language. *Farmers Group, Inc. v. Williams*, 805 P.2d 419, 422 (Colo.1991). If the language of the statute is plain and its meaning is clear, it must be applied as written, and we need not resort to any other rule of statutory interpretation. *In re Estate of Holmes*, 821 P.2d 300, 303 (Colo.App.1991).

## IV. Analysis

¶ 8 The Act was adopted by the General Assembly in 1986 in direct, but not immediate, response to our supreme court's decision in *Mile High Fence Co. v. Radovich*, 175 Colo. 537, 489 P.2d 308 (1971). § 13–21–115(1.5)(d), C.R.S.2012. In *Mile High Fence*, the court abandoned the traditional common law classifications of "invitee," "licensee," and "trespasser" in premises liability actions after concluding that they resulted in harsh consequences and judicial waste. 175 Colo. at 544, 489 P.2d at 313. The General Assembly stated that it was not reinstating the common law categories but was, instead, protecting landowners in some circumstances in which they had not been protected at common law. § 13–21–115(1.5)(e), C.R.S.2012.

¶ 9 The Act provides the exclusive remedy against a landowner for injuries sustained on the landowner's property. *Vigil v. Franklin*, 103 P.3d 322, 331 (Colo.2004); *Henderson v. Master Klean Janitorial, Inc.*, 70 P.3d 612, 613 (Colo.App.2003). The Act classifies injured parties into three categories based on their reasons for being on the land:

(a) "Invitee" means a person who enters or remains on the land of another to transact business in which the parties are mutually interested or who enters or remains on such land in response to the landowner's *express or implied representation* that the public is requested, expected, or intended to enter or remain.

(b) "Licensee" means a person who enters or remains on the land of another for the licensee's own convenience or to advance his own interests, *pursuant to the landowner's permission or consent.* "Licensee" includes a social guest.

(c) "Trespasser" means a person who enters or remains on the land of another *without the landowner's consent.*

§ 13–21–115(5), C.R.S.2012 (emphasis added).

¶ 10 A landowner's standard of care is determined by the classification of the injured party. *See* § 13–21–115(3), C.R.S. 2012; *Grizzell v. Hartman Enterprises, Inc.,* 68 P.3d 551, 553 (Colo.App.2003). With respect to an "invitee," a landowner, subject to exceptions not applicable here, is liable for the injuries caused by the failure "to exercise reasonable care to protect against dangers of which he actually knew or should have known." § 13–21–115(3)(c)(I), C.R.S.2012. With respect to a "licensee," a landowner is liable for injuries caused by the "failure to exercise reasonable care with respect to dangers created by the landowner of which the landowner actually knew," or the "unreasonable failure to warn of dangers not created by the landowner which are not ordinarily present on property of the type involved and of which the landowner actually knew." § 13–21–115(3)(b)(I)–(II), C.R.S.2012. And, finally, with respect to a "trespasser," a landowner is liable for injuries "willfully or deliberately caused by the landowner." § 13–21–115(3)(a), C.R.S.2012. It should come as no surprise that the classification of the injured party as an "invitee," "licensee," or "trespasser" is frequently outcome determinative, particularly when, as here, the plaintiff faces the prospect of being classified as a "trespasser."

¶ 11 The landowner maintains that the neighbor was a trespasser because he did not give the neighbor express consent to enter his property at the time of the injury. The neighbor counters that he had "implied consent" to enter the property because of the following undisputed facts: (1) the landowner gave him a key to his home to perform maintenance projects and care for the landowner's home when he was away; (2) the landowner and the neighbor were close friends who had a long history of entering each other's property without express permission; and (3) the loan of the propane tank gives rise to a logical inference that the neighbor was permitted to enter the landowner's property to return it without contemporaneous, express permission.

¶ 12 Agreeing with the landowner that the neighbor was a "trespasser," the trial court concluded that the word "consent" as used in the statutory definition of "trespasser" does not include "implied consent," reasoning as follows:

Here, [the neighbor] admits that the key given to him to access [the landowner's] house was to be used to take care of the house when [the landowner] was away and to perform projects in [the landowner's] house, neither of which were at issue during the incident. Moreover, [the neighbor] did not use the key for either of the purposes specified by [the landowner], nor did [the neighbor] use the key to access the property on the date of the incident; thus [neighbor's] access to the [the landowner's] property is outside the scope of the consent. Furthermore, the past history of [the neighbor's] access of the property does not constitute consent to access the property during the incident. At anytime a landowner can revoke previously given consent, thereby making the entrant a trespasser. Here, [the neighbor] claims he had implied consent to enter [the landowner's] property when [the neighbor] was not present. However, under section 13–21–115(5)(c) the consent required by the landowner is not defined as implied within the statutory language. Because [the neighbor] does not provide evidence of express permission to enter [the landowner's] land, the Court FINDS that [the neighbor] falls

within the statutory definition of a trespasser under section 13–21–115(5)(c).

We do not agree with this reasoning.

¶ 13 At common law, trespass was "a physical intrusion upon the property of another without the proper permission from the person legally entitled to possession of that property." *Betterview Investments, LLC v. Public Service Co.*, 198 P.3d 1258, 1262 (Colo. App.2008) (quoting *Hoery v. United States*, 64 P.3d 214, 217 (Colo.2003)); *accord Sanderson v. Heath Mesa Homeowners Ass'n*, 183 P.3d 679, 682 (Colo.App.2008). While the issue of what constitutes "proper permission" or "consent" has apparently not been addressed in Colorado, it has been addressed in other jurisdictions. One treatise states the following:

> As an application of the general rule that a person may not maintain an action for a wrong to which he or she has consented— and as seen in the court decisions—consent or license may be a defense to an action of trespass provided that it is granted by the person in possession, or entitled to possession of the premises—even if given under a mutual mistake of fact. *Consent may be implied from custom, usage, or conduct.*

7 S. Speiser, C. Krause & A. Gans, *The American Law of Torts* § 23.32, at 974–75 (2011) (emphasis added) (citing *The Steamboat New World v. King*, 57 U.S. 469, 16 How. 469, 14 L.Ed. 1019 (1853) (standard of care to steamboat men accepted pursuant to an industry custom as passengers without fare is the same as that accorded fare paying passengers); *Royal Investment Group, LLC v. Wang*, 183 Md.App. 406, 961 A.2d 665 (2008) (consent as a defense to trespass may be express or implied)).

¶ 14 Another treatise reaches the same conclusion, stating:

> Frequently, the consent will be implied rather than expressed. Consent may be inferred from custom, local or general, from usage, or from the conduct of the parties or some relationship between them.... Consent can be inferred from other circumstances as well; from an agreement to build a fence, for example.... And the existence of a driveway from a public street to the entrance of a residence may be construed as consent for visitors to use it to approach the houses. Consent implied by common custom, usage, and practice has, furthermore, been held to make lawful the entry by a journalist into an absent owner's house, after a fire, at the invitation of investigating officers, but such an inference has also been rejected.

1 F. Harper, F. James, Jr. & O. Gray, *Harper, James & Gray on Torts* § 1. 11, at 47–48 (3d ed.2006).

¶ 15 The common law and statutory definitions of "trespasser" are, for all practical purposes, identical—a person entering or remaining without consent. While it is clear that the General Assembly did not expressly intend to reinstate the common law definition of "trespasser," it, in effect, did so. We cannot conclude that in doing so, it intended to limit the common law meaning and scope of "consent."

¶ 16 The common definitions of the terms "consent" and "permission" are consistent with the foregoing analysis. The plain and ordinary meaning of "consent" is an "[a]greement, approval, or permission as to some act or purpose." *Black's Law Dictionary* 346 (9th ed.2009). "Agreement" is defined as "[a] mutual understanding between two or more persons about their relative rights and duties regarding past or future performances." *Id.* at 48. "Permission" is defined as "conduct that justified others in believing that the possessor of property is willing to have them enter if they want to do so." *Id.* at 1255.[1]

¶ 17 Given the historical legal interpretation of the terms "consent," "agreement," and "permission," we cannot conclude that the standard of care owed to a trespasser or a licensee turns on whether that consent is express or implied, or whether the consent is given for each individual entrance. Rather, in our view, a landowner may con-

---

1. While *Webster's Third New International Dictionary* 482 (2002) contains two definitions of "con-

sent," neither discusses the manner by which consent may or must be manifested.

sent to entry, absent express words, by his or her course of conduct.

¶ 18 The structure of the statute does not indicate that another construction was intended. With respect to the three categories of visitors, the consent or permission given by the landowner is (1) for the "invitee," "the landlord's *express or implied representation that the public is requested, expected, or intended to enter or remain* "; (2) for the "licensee," *"permission or consent* "; and (3) for the "trespasser," *"without . . . consent."* § 13–21–115(5)(a)–(c) (emphasis added). The fact the term "express or implied" is used with respect to an "invitee" but not with respect to a "licensee" or a "trespasser" does not, in our view, preclude implied consent from being sufficient to make one entering property a "licensee" and not a "trespasser."

¶ 19 Therefore, we conclude that the term "consent" as used in the Act includes implied consent. Whether this type of relationship and consent existed between the parties is a question of fact addressed here to the trial court.

¶ 20 Accordingly, the summary judgment is reversed, and the case is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

Judge DAILEY and Judge RICHMAN concur.