2013 COA 110

**Rodney REID, Plaintiff–Appellee,**

**v.**

**Daniel BERKOWITZ, d/b/a Shimon Builders, Defendant–Appellant.**

**Court of Appeals No. 12CA0769**

Colorado Court of Appeals,
Div. II.

Announced July 18, 2013

As Modified on Denial of Rehearing
Sept. 26, 2013

City and County of Denver District Court No. 10CV3320, Honorable Herbert L. Stern, III, Judge

Kennedy Childs P.C., Ronald H. Nemirow, John R. Mann, Denver, Colorado; Crawford Weiss, LLC, Jason Crawford, Brian M.

Weiss, Denver, Colorado, for Plaintiff–Appellee.

The Ross–Shannon Law Firm, P.C., Bradley Ross–Shannon, Justin H. Zouski, Lakewood, Colorado, for Defendant–Appellant.

Opinion by JUDGE CASEBOLT

¶ 1 In this premises liability action under section 13–21–115, C.R.S.2012, defendant, Daniel Berkowitz, doing business as Shimon Builders, appeals the judgment entered against him following a jury verdict in favor of plaintiff, Rodney Reid. Defendant contends the trial court erred in ruling that plaintiff was a licensee; that defendant could not apportion fault to independent contractors under section 13–21–111.5, C.R.S.2012; and that there was insufficient evidence of plaintiff's comparative negligence to justify submitting that issue to the jury. We affirm in part, reverse in part, and remand.

I. Background and Procedural History

¶ 2 On the evening of May 5, 2008, plaintiff, a construction worker, accompanied his friend, a painter, to a house that was being constructed by defendant in Denver. The house was eighty to ninety percent completed, and the painter was there to do touch-up painting. Plaintiff had himself performed some work on the construction project previously, but accompanied the painter that evening because the painter had offered to take him to a potential out-of-town job site the next day, and plaintiff planned to spend the night at the painter's house. Between these two individuals, it was customary to provide assistance to each other without pay in performing construction work.

¶ 3 The painter asked plaintiff to find some shop lights to illuminate the area to be painted. The lights were located on the top floor of the three-story structure. When plaintiff proceeded up the stairs, he apparently encountered an obstruction on or near the top landing. He tripped and grabbed the handrail, which had been placed previously by other construction workers. Plaintiff testified that when he grabbed the handrail, it gave way, and he fell three stories to the floor below, sustaining significant injuries.

¶ 4 Before trial, defendant designated the two construction workers who had installed the handrail as nonparties at fault under section 13–21–111.5, contending that they had negligently failed to secure it. The court approved the designation, and plaintiff later amended his complaint to include the two coworkers as defendants. Because the two coworkers failed to answer the complaint, the court entered a default judgment and awarded plaintiff damages of over $1 million against them.

¶ 5 The parties stipulated that defendant was a landowner under section 13–21–115(1), C.R.S. 2012, but disagreed on plaintiff's status. The trial court rejected defendant's contention that plaintiff was a trespasser and ruled during trial that plaintiff was a licensee. The court found that plaintiff, defendant, and the painter were well acquainted with one another and had worked together many times in the past. All three testified that plaintiff was welcome on the construction site. The painter and plaintiff testified that defendant frequently allowed his workers to bring others to help them with their tasks and knew that the painter often worked with assistance after hours. There was no evidence presented that plaintiff was not permitted to be on the construction site.

¶ 6 Defendant submitted proposed jury instructions concerning apportionment of fault to the two coworkers, as well as an instruction concerning comparative negligence. The court ruled that, because a matter of safety at the construction job site was involved, defendant had a nondelegable duty to maintain the premises in a safe condition; therefore, it held that an apportionment of fault to the two coworkers would not be permissible.

¶ 7 The court also rejected defendant's comparative negligence instruction because it concluded there was no evidence to support it. The court stated that the only evidence presented was that of plaintiff himself, who stated that he had tripped over some cables. The court stated that, by inference, the jury could decide plaintiff tripped over his own feet, but in this type of situation, tripping did not rise to the level of failing to exercise reasonable care.

¶ 8 Following trial, the jury awarded plaintiff $400,000 and the trial court entered judgment against defendant for that amount, adding interest. This appeal followed.

## II. Plaintiff's Status

¶ 9 Defendant contends the trial court erred in determining that plaintiff was a licensee at the time of the incident. We disagree.

### A. Standard of Review

¶ 10 The trial court determines whether a plaintiff was an invitee, a licensee, or a trespasser at the time of the injury. § 13–21–115(4), C.R.S. 2012; *Chapman v. Willey*, 134 P.3d 568, 569 (Colo.App.2006). We review the trial court's determination as a mixed question of law and fact. *Chapman*, 134 P.3d at 569. We defer to the trial court's credibility determinations and will disturb its findings of historical fact only if they are clearly erroneous and are not supported by the record. *Id.* We review de novo the trial court's application of the governing statutory standards. *Id.*

### B. Applicable Law

¶ 11 The duty that a landowner owes to an individual on the property varies depending upon the status of the individual. § 13–21–115(3), C.R.S.2012; *Corder v. Folds*, 2012 COA 174, ¶ 10, 292 P.3d 1177. As applicable here, the premises liability statute defines trespasser and licensee as follows:

> (b) "Licensee" means a person who enters or remains on the land of another for the licensee's own convenience or to advance his own interests, pursuant to the landowner's permission or consent. "Licensee" includes a social guest.
>
> (c) "Trespasser" means a person who enters or remains on the land of another without the landowner's consent.

§ 13–21–115(5)(b)–(c), C.R.S. 2012.

¶ 12 With respect to a licensee, a landowner is liable for injuries caused by the "failure to exercise reasonable care with respect to dangers created by the landowner of which the landowner actually knew," or the "unreasonable failure to warn of dangers not created by the landowner which are not ordinarily present on property of the type involved and of which the landowner actually knew." § 13–21–115(3)(b)(I)–(II), C.R.S. 2012. Concerning a trespasser, a landowner is liable only for injuries "willfully or deliberately caused by the landowner." § 13–21–115(3)(a), C.R.S. 2012.

¶ 13 The term "consent" as used in the statute includes implied consent. *Corder*, ¶ 17. "Permission" is defined as conduct that justifies others in believing that the possessor of property is willing to have them enter if they wish to do so. *Id.* at ¶ 16. The question of whether the landowner gave implied consent or permission to a plaintiff through a course of conduct is a question of fact for the trial court. *Id.* at ¶ 19.

### C. Application

¶ 14 Here, the trial court found that plaintiff was a licensee because he had an ongoing business relationship with defendant; he had worked on the construction site in question; it was customary for workers on the project to help each other, and defendant was aware of this custom; workers had flexibility as to how and when they could perform their work; and at the time of the accident, plaintiff was on the property helping the painter while waiting for a ride. Furthermore, defendant maintained an "open worksite," meaning that it was acceptable for workers to bring additional help to the site to complete a task without defendant's knowledge.

¶ 15 The trial court's findings and conclusions are supported by the record. Defendant testified that plaintiff was welcome on the job site and, had defendant seen plaintiff on the site on the night of the accident, defendant would not have asked plaintiff to leave and would have "hung out" with plaintiff. Furthermore, defendant testified he knew that the painter and plaintiff were friends; that the painter would sometimes work at night; that the painter always brought others to help him with his work; and that plaintiff had helped the painter in the past.

¶ 16 There was also testimony that plaintiff had worked on defendant's construction pro-

jects about twenty times since 2005. Plaintiff testified that he felt welcome on the property and that he had helped three different workers on the property: a welder, a plumber, and the painter. The painter testified defendant never directed him not to bring plaintiff to the site and that defendant had "no problem" if the painter brought others to the site to help him finish his work.

¶ 17 These facts and circumstances are sufficient to support the trial court's findings and conclusion that plaintiff had permission or consent to be upon the premises. *See Corder*, ¶ 19. Accordingly, the trial court did not err in concluding that plaintiff was a licensee.

### III. Apportionment of Fault

¶ 18 Relying upon the language in section 13–21–115(2), C.R.S.2012, and in section 13–21–111.5, defendant contends that the trial court erred in refusing to instruct the jury that it could apportion liability and fault to the two coworkers. We agree that the court should have instructed the jury that it could apportion fault, but conclude that under the circumstances present here, a shifting of the liability would have been improper and, therefore, the error is harmless.

### A. Standard of Review

¶ 19 We review questions of law and statutory interpretation de novo. *Progressive Cas. Ins. Co. v. Moore*, 2012 COA 145, ¶ 8, 292 P.3d 1124; *McIntire v. Trammell Crow, Inc.*, 172 P.3d 977, 979 (Colo.App.2007).

¶ 20 Our fundamental purpose in interpreting a statute is to give effect to the General Assembly's intent. *Reg'l Transp. Dist. v. Lopez*, 916 P.2d 1187, 1192 (Colo.1996). To determine legislative intent, we first look to the plain language of the statute. *State v. Nieto*, 993 P.2d 493, 500 (Colo.2000). If we can give effect to the ordinary meaning of words used by the legislature, the statute should be construed as written, giving full effect to the words chosen, as we presume that the General Assembly meant what it clearly said. *PDM Molding, Inc. v. Stanberg*, 898 P.2d 542, 545 (Colo.1995), *superseded by statute on other grounds*, Ch. 90, secs. 1–2, §§ 8–42–103(1)(g), –105(4), 1999 Colo. Sess. Laws 266.

¶ 21 Trial courts have a duty to correctly instruct juries on all matters of law. *Day v. Johnson*, 255 P.3d 1064, 1067 (Colo. 2011). We review de novo whether the instructions as a whole accurately informed the jury of the governing law. *Fishman v. Kotts*, 179 P.3d 232, 235 (Colo.App.2007). A trial court necessarily abuses its discretion if it bases its ruling on an erroneous view of the law. *People v. Wadle*, 97 P.3d 932, 936 (Colo.2004).

¶ 22 However, the failure to give a jury instruction cannot be a ground for reversal unless it prejudices a party's substantial rights. *See Banning v. Prester*, 2012 COA 215, ¶ 10, 317 P.3d 1284, 2012 WL 6700465; *Williams v. Chrysler Ins. Co.*, 928 P.2d 1375, 1378 (Colo.App.1996).

### B. Applicable Law

¶ 23 Section 13–21–115(2), part of the premises liability statute, provides in pertinent part:

In any civil action brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conducted or circumstances existing on such property, the landowner shall be liable only as provided in subsection (3) of this section. Sections 13–21–111 [comparative negligence], 13–21–111.5 [pro rata liability of defendants and nonparties], and 13–21–111.7 [assumption of risk] shall apply to an action to which this section applies.

The second sentence of the provision quoted above was added in 2006. *See* Ch. 107, sec. 1, § 13–21–115(2), 2006 Colo. Sess. Laws 344.

¶ 24 Section 13–21–111.5(1), C.R.S.2012, part of the statute to which section 13–21–115(2) of the premises liability act refers, provides generally for pro rata liability of defendants. As pertinent here, it states:

In an action brought as a result of a death or an injury to person or property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or

fault attributable to such defendant that produced the claimed injury, death, damage, or loss....

¶ 25 Section 13–21–111.5(2), C.R.S.2012, provides in pertinent part, that "[t]he jury shall return a special verdict ... determining the percentage of negligence or fault attributable to each of the parties and any persons not parties to the action of whom notice has been given ... to whom some negligence or fault is found[,] and determining the total amount of damages sustained by each claimant."

■ ¶ 26 When a defending party designates nonparties as being wholly or partially at fault under section 13–21–111.5(3)(b), C.R.S. 2012, a plaintiff has the option to join the designated nonparty at fault in the proceeding, thereby making him or her a party. *See Miller v. Byrne,* 916 P.2d 566, 577 (Colo. App.1995) (the plaintiff may respond to the designation of a nonparty by amending his or her complaint to add the designated party as a defendant); *see also Thompson v. Colo. & E. R.R. Co.,* 852 P.2d 1328, 1329–30 (Colo. App.1993) (requiring strict compliance with the statute in order for designation to be proper avoids a situation in which a named defendant reduces its liability by blaming a nonparty but a plaintiff does not have the chance to recoup that percentage of fault from the nonparty). If the plaintiff decides not to join the designated nonparty at fault, but that nonparty owed a duty of care to the plaintiff, the fact finder is charged with determining the percentage of negligence or fault attributable to each of the parties and any persons not parties to the action who have been properly designated. § 13–21–111.5(2). The court then enters judgment against the defendant only for his, her, or its proportionate share of fault. § 13–21–111.5(1)–(2).

■ ¶ 27 The pro rata apportionment statute demonstrates the General Assembly's intent that a tortfeasor should pay only for the portion of the injury that he or she caused. *E.g., Union Pac. R.R. Co. v. Martin,* 209 P.3d 185, 188 (Colo.2009); *Slack v. Farmers Ins. Exch.,* 5 P.3d 280, 287 (Colo.2000); *Paris v. Dance,* 194 P.3d 404, 407 (Colo.App.2008), *superseded by statute on other grounds,* Ch.

168, sec. 1, § 13–21–124, 2004 Colo. Sess. Laws 507–08.

### C. Application

#### 1. Did the Court Err in Rejecting the Instruction?

■ ¶ 28 In light of these clear and unambiguous statutory provisions and the intent of the General Assembly, we agree with defendant that principles of fault and apportionment were applicable in this premises liability action. The statutory provisions specifically provide that "[t]he jury shall return a special verdict ... determining the percentage of negligence or fault attributable to each of the parties." § 13–21–111.5(2).

¶ 29 Here, once the court determined that the designation was proper, plaintiff added the two coworkers as defendants in his amended complaint. And there is no dispute that the two coworkers owed plaintiff a duty of care. *See Miller,* 916 P.2d at 578 (generally, the person or entity designated as a nonparty at fault under section 13–21–111.5 must, in order for his or her fault or negligence to be measured under the statute, owe or have owed a duty recognized by the law to the injured plaintiff). Furthermore, although not determinative, plaintiff obtained a default judgment against the two coworkers.

¶ 30 Hence, defendant was entitled to a jury instruction directing the jury to measure the fault of the two coworkers in addition to the fault of defendant. *See* § 13–21–111.5. Thus, the trial court erred in rejecting defendant's tendered instruction.

#### 2. Was the Error Harmless?

■ ¶ 31 Plaintiff nevertheless contends that the court's rejection of the tendered instruction was harmless here, because defendant had a nondelegable duty as a landowner to maintain the premises in a safe condition, and under the nondelegability doctrine, any fault of the two coworkers would be imputed to him in any event. We now turn to that contention.

¶ 32 In *Springer v. City & County of Denver,* 13 P.3d 794, 804 (Colo.2000), the supreme court held, in the context of a

premises liability claim, that "[e]mployers of independent contractors have certain non-delegable duties, arising out of [a relationship] with the public, for which they are liable." The court cited Restatement (Second) of Torts § 422 (1965), as providing for a landowner's nondelegable duty to protect third parties from a structure's unsafe condition due to construction or repair. *Springer*, 13 P.3d at 804. That section of the Restatement provides, as pertinent here:

> A possessor of land who entrusts to an independent contractor construction, repair, or other work on ... a building or other structure upon [the land], is subject to the same liability as though he had retained the work in his own hands to others on ... the land for physical harm caused to them by the unsafe condition of the structure
>
> (a) while the possessor has retained possession of the land during the progress of the work....

¶ 33 The *Springer* court noted that the principles of section 422 are consistent with Colorado law, concluded that the General Assembly had intended to retain the doctrine of nondelegation in the context of its adoption of the premises liability statute, and held that "[a] landowner may not delegate to an independent contractor the obligation to exercise reasonable care to protect ... licensees against dangers within the scope of the statute." 13 P.3d at 804.

■ ¶ 34 Hence, a landowner, by delegating a task to an independent contractor, cannot thereby delegate his or her legal responsibility to maintain the premises in a safe condition:

> The rule stated in this Section [422] makes it impossible for a possessor of land to escape liability for the nonperformance of his duty to maintain his land in safe condition, so long as he is in possession of it, by delegating the task of doing the work necessary to the performance of that duty to an independent contractor.

Restatement (Second) of Torts § 422 cmt. e.

¶ 35 The effect of this nondelegable duty is to create vicarious liability for a possessing landowner hiring independent contractors who are individually negligent. *See Kidwell v. K–Mart Corp.*, 942 P.2d 1280, 1282 (Colo. App.1996) (in premises liability action, trial court should have instructed jury that negligence of independent contractor, who contracted with landowner to remove snow and ice, should be imputed to landowner); *Jules v. Embassy Props., Inc.*, 905 P.2d 13, 15 (Colo.App.1995) (premises liability statute imposes a statutory duty on those persons in possession of real property, and so long as a landowner retains such possession, it cannot delegate any statutory duties; hence, landowner could not avoid liability by delegating exclusive control over premises to a property manager, which had, in turn, hired an independent contractor to perform snow removal).

■ ¶ 36 Indeed, the label "nondelegable duty" "signals that the actor will be vicariously liable for the contractor's tortious conduct in the course of carrying out the activity." Restatement (Third) of Torts: Physical & Emotional Harm § 57 cmt. b (2012). Hence, a landowner in possession of the premises remains responsible for the entire degree or amount of fault existing as between his independent contractors and himself. *See Machado v. City of Hartford*, 292 Conn. 364, 972 A.2d 724, 730 (2009) ("[T]he non-delegable duty doctrine creates a form of vicarious liability, whereby the employer remains vicariously liable for the negligence of its independent contractors in their performance of the employer's nondelegable duty.").

¶ 37 Here, defendant had a nondelegable duty to plaintiff, a licensee, to exercise reasonable care with respect to dangers created by defendant of which he actually knew. The evidence is undisputed that defendant knew that the railing needed to be secured and directed the two independent contractor coworkers to adequately secure it, which they failed to do. Because the workers' fault is imputable to defendant, the trial court's rejection of the instruction is harmless. *See Banning*, ¶ 10 (the failure to give a jury instruction cannot be a ground for reversal unless it prejudices a party's substantial rights).

¶ 38 We recognize that, in ordinary situations where a plaintiff joins a designated nonparty in the action and the jury finds that all the defendants are at fault, the court will enter a judgment against each defendant reflecting only that particular percentage of the defendant's share of fault. *See Union Pac. R.R.*, 209 P.3d at 188. Under our analysis, that obviously will not occur when a defendant is vicariously liable for the fault of the other defendants. One might therefore question whether, when a defendant is vicariously liable for the acts or omissions of independent contractors, a court errs at all in failing to give an apportionment instruction to the jury. Such was the view the trial court adopted here, reasoning that an instruction was not appropriate because defendant would be liable for the acts and omissions of the independent contractor coworkers. That determination, however, ignores the statutory language of section 13–21–111.5, which, in our view, requires giving the instruction, and we are not at liberty to ignore the General Assembly's directive that the instruction should be given.

¶ 39 Accordingly, we hold that when, as here, a landowner defendant is vicariously liable under the nondelegability doctrine for the acts or omissions of the other defendants, the trial court should nevertheless instruct the jury to determine the respective shares of fault of the landowner defendant (who may be individually negligent) and the other defendants, but in entering a judgment, the court shall aggregate the fault of the defendant landowner and any other defendants for whom the landowner defendant is vicariously liable.

¶ 40 For several reasons, we reject defendant's contention that the provisions of section 13–21–115(2) added in 2006, changed the law such that the nondelegability principles enunciated in *Springer, Kidwell,* and *Jules* were overruled.

¶ 41 First, the sentence in section 13–21–115(2) stating that principles of fault apportionment are applicable in premises liability actions did not change the law. *See Union Pac. R.R.*, 209 P.3d at 188–90 (apportionment of fault and pro rata liability already applied to premises liability actions even before 2006 amendment of section 13–21–115(2)). Accordingly, the principles of nondelegability identified in *Springer*, although articulated in 2000, were not overruled or affected by the 2006 statutory amendment, and *Springer, Kidwell,* and *Jules* remain good law.

¶ 42 Second, principles of fault allocation set forth in section 13–21–111.5 do not affect vicarious liability. *See Bank of Denver v. Se. Capital Grp., Inc.*, 763 F.Supp. 1552, 1560 (D.Colo.1991) (section 13–21–111.5 does not abrogate a partner's vicarious liability for wrongful acts or omissions of other partners). Because the concept of nondelegable duty is a species of vicarious liability, *see* Restatement (Third) of Torts: Physical & Emotional Harm § 57, it follows that fault allocation cannot affect the party who has a nondelegable duty.

¶ 43 Third, both sections 13–21–111.5 and 13–21–115, even as amended, are silent as to nondelegable duties on the part of a landowner. We do not interpret such silence to abrogate the principles of nondelegable duties. *See Preston v. Dupont*, 35 P.3d 433, 440 (Colo.2001) (statutes may not be interpreted to abrogate the common law unless such abrogation was clearly the intent of the General Assembly). While section 13–21–111.5(6), C.R.S.2012, contains a discussion of nondelegable duties, it does so in the context of construction agreements that contain liability shifting and indemnification provisions, not in the common law context.

¶ 44 Defendant nevertheless contends that this interpretation cannot be squared with the default judgment plaintiff obtained against the two coworkers. Essentially, he contends that plaintiff's allegations that the two coworkers were negligent and that their negligence was a cause of plaintiff's injuries were confessed and made an order of the court by the default judgment, which is inconsistent with the court's ruling that fault could not be apportioned to them. We disagree.

¶ 45 Our conclusion does not mean that the two coworkers were not at fault or that they had no duty to plaintiff. Instead, it simply precludes a shifting of the liability that de-

fendant landowner retained under the nondelegable duty rule. In the language of section 13–21–111.5(1), defendant is only liable for the degree or percentage of fault "attributable" to him. The nondelegability rule, because it is essentially a rule of vicarious liability, encompasses the fault of the two coworkers and means that the entirety of defendant's personal fault in knowing of the dangerous condition and failing to remedy it, together with the fault of the independent contractors who negligently installed the handrail and failed to secure it, is "attributable" to defendant.

¶ 46 Defendant also asserts that the court's ruling results in a double recovery for plaintiff, because he can collect the $1 million judgment from the two coworkers and also can collect his damage award of $400,000 from defendant. This assertion ignores, however, that defendant may seek contribution under section 13–50.5–102, C.R.S. 2012, from the two coworkers to the extent he pays more than his pro rata share of the common liability, and might seek indemnity from them as well under *Hamm v. Thompson*, 143 Colo. 298, 301, 353 P.2d 73, 74 (1960) (a master who pays for injuries or damage to another resulting from his servant's tort has a right of indemnification from his servant for the amount so paid). Further, while we are not required to determine whether the post-verdict collateral source rule contained in section 13–21–111.6, C.R.S. 2012, would operate here, we note that its provisions allow a court to reduce the amount of the verdict when the injured person has been indemnified or compensated for his loss by any other person in relation to the injury, damage, or loss sustained.

¶ 47 Defendant's reliance upon *Kidwell* for a different result is misplaced. There, the division held that the obligation of the landowner in possession of property to maintain the premises in a safe condition for invitees may not be delegated to an independent contractor. 942 P.2d at 1282. Even so, it perceived no error by the trial court in allowing a snow removal contractor to be named as a nonparty at fault. *Id.* Contrary to defendant's contention, however, the division approved the designation of the snow removal

contractor not because fault could be allocated to it under section 13–21–111.5, but because the contractor reached a settlement with the plaintiff, thus entitling the landowner to an offset under the rule of *Smith v. Zufelt*, 880 P.2d 1178, 1188 (Colo.1994). *Kidwell*, 942 P.2d at 1283. *Smith* held that, where a settlement is reached with one or more parties to avoid exposure to liability at trial, and trial is subsequently held against nonsettling defendants, the trial verdict must be reduced by an amount equal to the cumulative percentage of fault attributed to the settling nonparties. 880 P.2d at 1188. The *Kidwell* court applied the *Smith* rule and concluded that the landowner was entitled to designate the snow removal operator as a nonparty at fault "after the settlement was accomplished." 942 P.2d at 1283. The court nevertheless also concluded that the plaintiff was entitled to an instruction on retrial that any negligence of the contractor must be imputed to the landowner. *Id.*

¶ 48 Here, in contrast, no settlement was reached with the two coworkers. Hence, this aspect of *Kidwell* is inapposite here.

¶ 49 Accordingly, we reject defendant's contention of error.

## IV. Comparative Negligence

¶ 50 Defendant next asserts that the trial court erred in refusing to instruct the jury on plaintiff's comparative negligence, based on a lack of sufficient evidence. Defendant argues that there was evidence of plaintiff's negligence presented at trial in that plaintiff was walking up the stairs in a dark construction site without proper lighting and tripped. We agree that the court should have given a comparative negligence instruction.

### A. Standard of Review

¶ 51 Trial courts have a duty to correctly instruct juries on matters of law. *Day*, 255 P.3d at 1067; *Krueger v. Ary*, 205 P.3d 1150, 1157 (Colo.2009). This duty requires the trial court to instruct on a party's theory of the case if it is supported by competent evidence, *Anderson v. Munoz*, 159 Colo. 229, 237, 411 P.2d 4, 8 (1966), and entitles a party to an instruction embodying

the party's theory if there is sufficient evidence in the record to support it. *Fed. Ins. Co. v. Pub. Serv. Co.*, 194 Colo. 107, 112, 570 P.2d 239, 242 (1977).

¶ 52 An instruction to the jury on comparative negligence must be based on competent evidence appearing in the record. *Powell v. City of Ouray*, 32 Colo.App. 44, 49, 507 P.2d 1101, 1105 (1973). The general rule, enunciated in *Powell*, is that "comparative negligence rules are applicable only where there is evidence presented which would substantiate a finding that both parties are at fault, and the inability to prove any negligence on the part of plaintiff eliminates the operation of the rule." *Id.* Accordingly, it is reversible error to submit the defense of comparative negligence to the jury where there is no evidence to support it. *Morgan v. Bd. of Water Works*, 837 P.2d 300, 304 (Colo.App.1992). Conversely, when the evidence supports a finding that both parties are at fault, the court must instruct the jury on comparative negligence and allow the jury to assess the relative degrees of the parties' fault. *Lyons v. Nasby*, 770 P.2d 1250, 1260 (Colo.1989), *superseded by statute on other grounds*, Ch. 100, sec. 1, § 12–47–128.5, 1986 Colo. Sess. Laws 658–59.

¶ 53 The matter for our determination is therefore whether there is some evidence in the record to support a comparative negligence instruction. *Gordon v. Benson*, 925 P.2d 775, 778 (Colo.1996).

### B. Applicable Law

¶ 54 Comparative negligence means a failure to do an act that a reasonably careful person would do, or the doing of an act that a reasonably careful person would not do, under the same or similar circumstances, to protect oneself from bodily injury. *See Lyons*, 770 P.2d at 1254; *Burr v. Green Bros. Sheet Metal, Inc.*, 159 Colo. 25, 35–36, 409 P.2d 511, 516–17 (1966).

### C. Application

¶ 55 Here, defendant contends that plaintiff was comparatively negligent because he was in a house under construction, which was dark and did not have all its lighting installed, and he tripped on or around the third floor landing. Defendant contends that the jury could have inferred that a construction site is messy and dangerous and that plaintiff may have "tripped over his own two feet," which caused him to fall through the railing. We conclude that there is some record evidence to support defendant's factual contention. The question then is whether the conduct and conditions asserted could provide sufficient evidence for a jury to conclude that plaintiff was comparatively negligent.

¶ 56 Neither party has cited any factually similar cases. Nevertheless, we have found several which, together with materials from the Restatement (Second) of Torts, inform our determination.

¶ 57 A plaintiff must be cognizant of the physical conditions and surroundings present when he or she acts or fails to act. The words "reasonable man" "denote a person exercising those qualities of attention, knowledge, intelligence, and judgment which society requires of its members for the protection of their own interests." Restatement (Second) of Torts § 283 cmt. b (concerning negligence); *see* Restatement (Second) of Torts § 464 cmts. b & d (concerning contributory negligence). A person must exercise such perception of the circumstances, memory, knowledge of other pertinent matters, intelligence, and judgment as a reasonable person would exercise to avoid an unreasonable risk of harm. *See* Restatement (Second) of Torts § 289.

¶ 58 Application of these principles is evidenced by the decision in *McCarthy v. Kunicki*, 355 Ill.App.3d 957, 291 Ill.Dec. 502, 823 N.E.2d 1088 (2005). There, the appeals court addressed whether the trial court had erred in instructing the jury concerning a thirteen-year-old girl's contributory negligence in a case involving a slip and fall on an outside stairway attached to the defendants' home. There was evidence that the plaintiff was an intelligent, mature young woman; that she could appreciate that snow was on the ground and the dangerous condition thereby created; that she knew there was snow, ice, or both on the stairs and there was no handrail, yet she decided to proceed; that

she was wearing clog-type shoes, and she did not ask for assistance; that she walked down the middle of the stairs without bracing herself against the side of the house; and that she did not ask for permission to go down to the basement. 291 Ill.Dec. 502, 823 N.E.2d at 1101. Under these circumstances, the appellate court concluded that the trial court had not erred in finding there to be a factual question whether the plaintiff had been contributorily negligent. *Id.*, 291 Ill.Dec. 502, 823 N.E.2d at 1102.

¶ 59 Here, the jury could infer that plaintiff was aware or should have been aware that the construction site was dimly lit, but apparently did not employ a flashlight or other lighting device when going up the stairs; that being a construction worker with significant experience, he knew or should have known that construction sites are generally messy and contain debris and material throughout that could present an unreasonable risk of bodily injury; that he failed to perceive or be attentive to the existence of cords on or around the third floor landing; and that he tripped while approaching or alighting on the third floor landing. *See Sellers v. Kilis*, 74 So.2d 71, 72–74 (Fla.1954) (holding that the issue of plaintiff's contributory negligence was within the province of the jury to decide where plaintiff had left her apartment; it was dark; the light in the hall was burned out; she proceeded down the steps in the darkness and presumably tripped over a bent metal binder on one of the stairs about which she was aware; and she grasped the handrail, but it gave way, causing her to fall down the stairs); *Lamm v. Bissette Realty, Inc.*, 327 N.C. 412, 395 S.E.2d 112, 116 (1990) (in a slip and fall case, while a plaintiff may not know why she fell, the mere fact that she did fall was some evidence of contributory negligence).

¶ 60 We acknowledge that the darkness of the construction site and the cause of plaintiff's tripping have nothing to do with the defectively installed handrail. *See Sellers*, 74 So.2d at 73 ("The absence of light had nothing to do with the failure of the handrail."). Nevertheless, "[t]he contributory negligence of the plaintiff in attempting to negotiate a dark staircase could prevent recovery" with

respect to such obstructions as would have been disclosed by light, even though a handrail collapses when being grasped. *See id.* Here, there is evidence that plaintiff did not see the cords over which he claimed to have tripped; the cords might have been disclosed by the use of adequate light; and had he seen the cords, he might not have tripped.

¶ 61 On rehearing, plaintiff asserts that our analysis fails to recognize that "persons who find themselves in a position where they must rely on a safety device, such as a guardrail, will often have found themselves in need of the safety device precisely because of their own negligence," and that "when a safety device fails as a result of negligence, the person who needed the safety device cannot be faulted for needing it." In our view, however, these assertions do not justify a different result for two reasons.

■ ¶ 62 First, even when the failure of safety devices is involved, the contributory fault of the injured person is a relevant consideration when that fault may be a cause of an injury or loss. For example, in cases involving defective guardrails on public highways, courts have held that a vehicle driver's negligence in precipitating a collision with the guardrail should be measured and compared to the fault of the entity creating or maintaining that defective device. *See Tassin v. Bendel*, 989 So.2d 217, 230 (La.Ct.App. 2008) (concluding that negligence of bus driver in losing control of vehicle combined with state's failure to design, install, and properly maintain a guardrail system equally caused the harm to the passengers on the bus); *Simpson v. State*, 636 So.2d 608, 614 (La.Ct. App.1993) (where state had failed to correct a defective bridge railing, court measured fault of state with that of the negligent driver who collided with it); *Elliott v. City of New York*, 145 A.D.2d 386, 535 N.Y.S.2d 728, 730 (N.Y.App.Div.1988) (where plaintiff struck a guardrail while attempting to avoid a deer crossing the roadway, court reversed jury verdict finding that plaintiff's negligent departure from the roadway was not a cause in fact of the impact with the guardrail and his resultant injuries, stating "That [plaintiff's] injuries would have been minimal but for the [City's] negligence . . . is of no moment. It

was only through [plaintiff's] negligence that [he] was placed in a position to be harmed by the negligence of the [City]. This was sufficient for comparative negligence to apply, even if [plaintiff] would not have suffered any harm, but for the [City's] fault." (quoting *Clark v. State*, 124 A.D.2d 879, 508 N.Y.S.2d 648, 649 (N.Y.App.Div.1986))).

¶ 63 In "crashworthiness" cases involving safety defects in vehicles, the same principle applies. *See Dannenfelser v. DaimlerChrysler Corp.*, 370 F.Supp.2d 1091, 1094–97 (D.Haw.2005) (holding that contributory negligence defense was available in strict product liability claim asserting defective air bags in vehicle, even though the plaintiff sought recovery only for damages resulting from the "second collision" between her head and the steering column; and collecting cases noting that the majority of courts to address the issue have found that comparative negligence principles apply in crashworthiness and second collision cases); *Daly v. Gen. Motors Corp.*, 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162, 1165–70 (1978) (driver's failure to wear seatbelt was contributory negligence that could be asserted in "second collision" product liability case); *see also* Tracy A. Bateman, Annotation, *Liability Under State Law for Injuries Resulting from Defective Automobile Seatbelt, Shoulder Harness, or Restraint System*, 48 A.L.R.5th 1, § 2(b) (1997) (noting that comparative negligence has been generally held to apply in crashworthiness actions). *But see D'Amario v. Ford Motor Co.*, 806 So.2d 424, 431–35 (Fla.2001) (examining majority and minority views in crashworthiness cases and adopting minority view that comparative negligence is not an available defense in crashworthiness cases), *superseded by statute*, 2011 Fla. Laws 3319.

¶ 64 For the above reasons, we further reject plaintiff's contention that our result "is akin to blaming a driver whose seatbelt failed in an accident for negligence in causing the accident in the first place." As noted above, the majority of courts to address this situation have allowed just that comparison.

¶ 65 Second, plaintiff may certainly argue to the jury on retrial that any negligence of his own was not a cause of his injuries, damages, and losses. *See Kaiser Found.*

*Health Plan v. Sharp*, 741 P.2d 714, 719 (Colo.1987) (to prove causation in a negligence case, a party must show that the injury would not have occurred but for the negligent conduct of the opposing party); *see also N. Colo. Med. Ctr., Inc. v. Comm. On Anticompetitive Conduct*, 914 P.2d 902, 908 (Colo. 1996) (" '[B]ut for' causation is satisfied if the negligent conduct in a 'natural and continued sequence, unbroken by any efficient, intervening cause, produce[s] the result complained of, and without which the result would not have occurred." (quoting *Smith v. State Comp. Ins. Fund*, 749 P.2d 462, 464 (Colo.App.1987))); *cf. Reigel v. SavaSeniorCare, L.L.C.*, 292 P.3d 977, 985 (Colo.App. 2011) (where some events unrelated to the negligent conduct may also have contributed to bringing about the claimed injury, a party must show that the negligence in question was a substantial factor in producing the injury).

¶ 66 Indeed, we assume that on remand, plaintiff will argue that few, if any, of his injuries and damages resulted from his own negligence and a majority, if not all, were the result of the failure of the handrail. *See Montag v. Honda Motor Co.*, 75 F.3d 1414, 1419 (10th Cir.1996) (applying Colorado law, and noting that in a crashworthiness case, the jury "is already comparing the plaintiff's and the defendant's behavior in order to determine causation. Requiring the jury to make a similar determination for the purposes of damages is certainly reasonable and consistent with Colorado's comparative fault statute").

¶ 67 We conclude that there is sufficient evidence that justifies giving an instruction on comparative negligence here, and that principles of comparative negligence should apply in this factual setting. Hence, the trial court erred in rejecting such an instruction. We accordingly must remand for a new trial. However, because defendant has not appealed the jury's determination of his negligence and there is no contention of error concerning the damage award, the fact of defendant's negligence and the amount of damages awarded need not be retried. If, on retrial, the jury allocates fault between defendant and plaintiff, the court must then reduce the

damage award accordingly based on the percentage of fault allocated to the plaintiff that the jury finds was a cause of his injuries, damages, and losses.

¶ 68 That part of the judgment rejecting a comparative negligence instruction is reversed, and the case is remanded for a new trial on liability only. On remand, if the evidence introduced on retrial is similar to that introduced in the first trial, the trial court may instruct the jury that defendant was negligent, and must instruct the jury to consider whether plaintiff was comparatively negligent. The balance of the judgment is affirmed.

JUDGE LICHTENSTEIN and JUDGE DUNN concur.