COLORADO COURT OF APPEALS
 2015 COA 183
 
 

Court of Appeals No. 15CA0486
Eagle County District Court No. 10CV306
Honorable Frederick W. Gannett, Judge

Renee Legro and Stephen Legro,
Plaintiffs-Appellants,
v.
Samuel Robinson and Cheri Robinson,
Defendants-Appellees.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS
Division A
Opinion by JUDGE HAWTHORNE
Taubman and J. Jones, JJ., concur
Announced December 31, 2015

Bloch & Chapleau, LLC, Joseph D. Bloch, Trenton J. Ongert, Denver, Colorado, for Plaintiffs-Appellants
Campbell, Latiolais, and Averbach, LLC, Michael O. Frazier, Phillip M. Khalife, Denver, Colorado, for Defendants-Appellees
 

¶1         In this interlocutory appeal, plaintiffs, Renee Legro and Stephen Legro, appeal from the district court’s order (1) determining as a matter of law that Ms. Legro was a trespasser as to defendants, Samuel Robinson and Cheri Robinson, under Colorado’s Premises Liability Act (PLA), § 13-21-115, C.R.S. 2015; and (2) concluding that the working dog exemption in Colorado’s dog bite statute, § 13­21-124, C.R.S. 2015, insulates the Robinsons from strict liability.
¶2         We conclude that the district court erred in determining that (1) as to the Robinsons, Ms. Legro was a trespasser under the PLA; and (2) the Robinsons’ grazing permit creates a property interest sufficient to satisfy the dog bite statute’s working dog exemption. Accordingly, we reverse the district court’s order and remand the case for further proceedings.
I. Facts and Procedural History
¶3         The underlying facts in this case are set forth in Legro v. Robinson, 2012 COA 182 (Legro I), and Robinson v. Legro, 2014 CO 40 (Legro II). As relevant here, the Robinsons are sheep ranchers who hold a “Term Grazing Permit” issued by the United States Forest Service that allows them to graze a certain number of sheep on federal land within the White River National Forest in Eagle County (the subject land). Ms. Legro sustained serious injuries when two of the Robinsons’ predator control dogs, Tiny and Pastor, attacked her on a road located on the subject land while she was participating in a bike race sponsored by the Vail Recreation District. Both the Robinsons and the district were authorized, by permit, to access the road where Ms. Legro sustained her injuries.

¶4         The Legros sued, asserting claims of negligence, negligence per se, loss of consortium, and strict liability under the dog bite statute.
¶5         The Robinsons moved for summary judgment, arguing that the PLA preempts the Legros’ common law claims, and that they are not subject to strict liability under the dog bite statute because of the working dog exemption in section 13-21-124(5)(f).[1] The district court granted the motion. It ruled that the Robinsons were “landowners” under the PLA, and thus the PLA preempts the Legros’ common law claims. The court dismissed the Legros’ strict liability claim. The court concluded that the working dog exemption in the dog bite statute applies because a “lessee” of land qualifies for the exemption, and the exemption’s requirements are satisfied because the Robinsons owned the dogs and the dogs were working as predator control dogs when they attacked Ms. Legro.

¶6         The Legros appealed. A division of this court in Legro I affirmed the district court’s judgment that the Robinsons were landowners under the PLA, but it concluded that the court erred in holding that the working dog exemption defeated the Legros’ strict liability claim. Legro I, ¶¶18, 38. The division construed the exemption to apply where a predator control dog was working on (1) the dog owner’s property or (2) property controlled by the dog owner. Id. at ¶38.
¶7         The supreme court granted certiorari to consider whether the division in Legro I correctly interpreted the working dog exemption’s phrase “on the property of or under the control of the dog’s owner.” Legro II, ¶9. Contrary to the Legro I division’s interpretation, the supreme court in Legro II interpreted this phrase as concerning the control of the dog, not the property. The supreme court held that the working dog exemption insulates a dog owner from strict liability if a person is bitten by a working dog while (1) on the property of the dog owner or (2) the dog is working under the control of the dog owner on either public or private property. Id. at ¶¶22, 23.

¶8         The supreme court noted that the district court had not applied the correct test, and that the district court’s analysis was based on its faulty premise that the Robinsons had leased the subject land. Id. at ¶24. The court affirmed the Legro I division’s judgment and remanded the case to the district court for further proceedings, including reconsidering the working dog exemption’s applicability in light of its interpretation of the exemption’s phrase “on the property of or under the control of the dog’s owner.” Id. It also noted that on remand the Legros could assert a claim under the PLA if they were able to satisfy the standard for a motion to amend their complaint. Id.
¶9         On remand, the Legros moved to amend their complaint to add a claim for relief under the PLA. The district court granted the motion.
¶10         In a C.R.C.P. 56(h) motion, the Robinsons asked the court to determine the duty of care they owed Ms. Legro under the PLA. They argued that the Colorado Recreational Use Statute (CRUS), §§ 33-41-101 to -106, C.R.S. 2015, applies, so Ms. Legro was a trespasser.[2] Alternatively, they argued that Ms. Legro was neither an invitee nor a licensee under the PLA. They further argued that if Ms. Legro was an invitee under the PLA, then she was an agricultural invitee. In their response to the motion, the Legros argued only that the CRUS did not apply and that Ms. Legro was an invitee under the PLA.

¶11         Later, the Robinsons filed a “trial brief” with the district court, which discussed, among other things, the sheep grazing permit, case law, and the working dog exemption. In the brief, they informed the court that after trial they would request a finding that their sheep grazing permit satisfies the working dog exemption’s “property of . . . the dog’s owner” requirement relating to the Legros’ strict liability claim.
¶12         The district court issued a written order ruling on the Robinsons’ Rule 56(h) motion. It concluded that the CRUS did not apply to this case, and it determined that, as to the Robinsons, Ms. Legro was a trespasser under the PLA. In the same order, although neither party had requested that it do so before trial, the court ruled that the working dog exemption in the dog bite statute bars the Legros’ strict liability claim because the Robinsons’ grazing permit creates a sufficient property interest to satisfy the exemption.

¶13         The Legros filed, and the district court granted, a motion for interlocutory appeal pursuant to C.A.R. 4.2. The Legros then petitioned this court for interlocutory appeal pursuant to that rule. We granted the petition as to the following issues:
1. Whether the district court correctly determined that Ms. Legro was a trespasser under the PLA, and thus the duty of care owed to her by the Robinsons was the reasonable care to protect against damages willfully or deliberately caused by defendants.
2. Whether the district court correctly determined that the Robinsons’ grazing permit conferred a sufficient property interest to constitute “the property of . . . the dog’s owner” such that the working dog exemption applies to bar the Legros’ statutory dog bite claim.

II. Ms. Legro’s Status Under the PLA

¶14         The Legros contend that the district court erred by ruling that Ms. Legro was a trespasser, rather than an invitee, under the PLA at the time of the attack. The division in Legro I concluded that the Robinsons were landowners under the PLA, and therefore, we focus on Ms. Legro’s status as to the subject land. Because we conclude that, as to the Robinsons, Ms. Legro was not a trespasser, but a licensee, we reverse the district court’s ruling.
A. Standard of Review
¶15         The district court determines under the PLA whether a plaintiff was an invitee, licensee, or trespasser at the time of injury. Reid v. Berkowitz, 2013 COA 110M, ¶10. We review the court’s determination as a mixed factual and legal question. Id. We defer to the court’s credibility determinations, and will disturb its findings of historical fact only if they are clearly erroneous and not supported by the record. Id. But we review de novo the court’s application of the historical facts to the governing legal standards. Id.
¶16         Under Rule 56(h), a district court may enter an order deciding a legal question “[i]f there is no genuine issue of any material fact necessary for the determination of the question of law.” We review legal questions decided under Rule 56(h) de novo. Goodman Assocs., LLC v. Winter Quarters, LLC, 2012 COA 96, ¶20.

B. Preservation
¶17         We first address a matter of issue preservation. On appeal, Ms. Legro asserts for the first time that the record contains evidence that the Robinsons took overt acts from which it can be inferred they invited her and other bicyclists to enter on the property. However, as the Robinsons correctly point out, Ms. Legro did not raise this argument before the district court. In fact, she argued the opposite: that there is no evidence of any affirmative act. So, we do not address Ms. Legro’s “invitation” argument. See Estate of Stevenson v. Hollywood Bar & Cafe, Inc., 832 P.2d 718, 721 n.5 (Colo. 1992) (“Arguments never presented to, considered or ruled upon by a [district] court may not be raised for the first time on appeal.”).
¶18         But Ms. Legro did argue in the district court that the Robinsons “certainly expected” the public to enter on the subject land because the Robinsons’ grazing permit gives them no right to exclude others. Accordingly, we examine the Legros’ contention that the relationship between the Robinsons and the Forest Service, which consented to Ms. Legro’s entry, mandates the conclusion that the Robinsons consented to Ms. Legro’s entry.

C. Legal Framework and Analysis
¶19         The PLA promotes a “state policy of responsibility by both landowners and those upon the land as well as [assuring] that the ability of an injured party to recover is correlated with his status as a trespasser, licensee, or invitee.” § 13-21-115(1.5)(a). The statute’s central purpose is to determine private landowners’ liability to persons entering their land based on whether the entrant is an invitee, a licensee, or a trespasser. § 13-21-115(1.5); Pierson v. Black Canyon Aggregates, Inc., 48 P.3d 1215, 1219 (Colo. 2002). The PLA defines invitee, licensee, and trespasser as follows:
(a) “Invitee” means a person who enters or remains on the land of another to transact business in which the parties are mutually interested or who enters or remains on such land in response to the landowner’s express or implied representation that the public is requested, expected, or intended to enter or remain.
(b) “Licensee” means a person who enters or remains on the land of another for the licensee’s own convenience or to advance his own interests, pursuant to the landowner’s permission or consent.
(c) “Trespasser” means a person who enters or remains on the land of another without the landowner’s consent.

§ 13-21-115(5). And it requires us to determine the category into which Ms. Legro falls. § 13-21-115(4).
¶20         To address Ms. Legro’s “expectation” argument, we must first determine whether the Robinsons consented to or permitted Ms. Legro’s presence on the property.[3] We conclude that they did.
¶21         The PLA distinguishes the status of entrants largely by virtue of the nature and extent of consent, if any, given by the landowner:

 “invitee” — the landowner’s “express or implied representation”; 
 “licensee” — the landowner’s “permission or consent”; 
 “trespasser” — remaining on land “without the landowner’s consent.”

§ 13-21-115(5).

¶22         As used in the PLA, consent retains its generally accepted meaning: “[a]greement, approval, or permission as to some act or purpose.” Corder v. Folds, 2012 COA 174, ¶¶15-16 (alteration in original) (quoting Black’s Law Dictionary 346 (9th ed. 2009)) (defining “consent” by its “plain and ordinary meaning”).[4] Consent may be implied from custom, usage, conduct, or some relationship between the parties. Id. at ¶¶13-14.
¶23         Relying on section 13-15-115(4),[5] the Robinsons urge us to consider only the contact or actions between themselves and Ms. Legro. But that statute does not limit the determination of the claimant’s status as to each landowner to only the dealings between the claimant and each landowner. Colorado law recognizes that in determining whether, and to what extent, a particular landowner has given consent, the court must also consider the relationship between relevant landowners.

¶24         For instance, in Wilson v. Marchiondo, 124 P.3d 837 (Colo. App. 2005), the division determined that a tenant’s social guest was a licensee with respect to the landlord because the relationship between the landlord and tenant was such that the landlord permitted or consented to the tenant’s inviting social guests. Id. at 840-41. Similarly, in Henderson v. Master Klean Janitorial, Inc., 70 P.3d 612 (Colo. App. 2003), the division held that an injured party (who had slipped and fallen on the property) was an invitee of a contractor hired by the property owner to clean and maintain the property because the injured party was an invitee of the owner (and of a lessee). Id. at 613, 616; see also Wright v. Vail Run Resort Cmty. Ass’n, Inc., 917 P.2d 364, 364-65 (Colo. App. 1996) (guest of tenant was a licensee as to the owner-landlord).
¶25         So, while the Robinsons are correct that we must consider the relationships between the injured party and the landowner, see § 13-21-115(4); Henderson, 70 P.3d at 615, these cases make clear that the relationships between relevant landowners are a critical part of that analysis.

¶26         In this case, we consider whether the relationship between the Robinsons and the Forest Service is such that the Robinsons’ consent to Ms. Legro’s entry on the property should be implied.
¶27         We conclude that the grazing permit granted by the Forest Service to the Robinsons provides a sufficient basis to infer that the Robinsons, on accepting the permit, consented to Ms. Legro’s entry on the property. As Justice Hobbs pointed out in Legro II:
A grazing permit differs from a leasehold estate in several important respects. For example, a lease generally grants the tenant an exclusive right to possession of the whole property, which includes the right to exclude others, even the landlord. See Restatement (Second) of Property, Land. & Tenant § 1.2 cmt. a (1977). A grazing permit confers a revocable, non-exclusive license to access the federal lands for a limited purpose (here, grazing), subject to numerous terms and conditions; it does not confer a property interest entitling permit holders to exclude others, particularly the federal government. See 36 C.F.R. § 222.3(b) (2014) (“Grazing permits . . . convey no right, title, or interest held by the United States in any lands or resources.”); Hage v. United States, 51 Fed. Cl. 570, 586-87 (2002) (“[G]razing permits are merely a license to use the land rather than an irrevocable right of the permit-holder . . . . At no time have the grazing permits been recognized as a right but rather a privilege . . . .”); U.S. Forest Serv. Manual § 2230.3(2) (Sept. 9, 2005) (“The holding of [grazing] permits is a privilege, not a property right.”).

Legro II, ¶27 (Hobbs, J., concurring) (alterations in original); see also Pub. Lands Council v. Babbitt, 529 U.S. 728, 731-34, 740-42 (2000) (discussing the very limited nature of a grazing permit issued pursuant to the Taylor Grazing Act, 43 U.S.C. §§ 315-16); Placer Cty. Water Agency v. Jonas, 80 Cal. Rptr. 252, 255-57 (Cal. Ct. App. 1969) (holding that Forest Service grazing permits are revocable licenses that create no property interests in the holder).[6]
¶28         The Robinsons’ grazing permit does not diminish the Forest Service’s right to determine who may enter the property. So, by accepting the permit, the Robinsons impliedly consented to entry on the property by any person as to whose presence the Forest Service consented. Therefore, Ms. Legro was not a trespasser as to the Robinsons.

¶29         Next, we determine whether Ms. Legro was an invitee or licensee.[7] The principal distinction between invitee and licensee “turns on whether that person’s presence on the land was affirmatively invited or merely permitted.” Wycoff v. Grace Cmty. Church of Assemblies of God, 251 P.3d 1260, 1267 (Colo. App. 2010). If affirmatively invited, the person is an invitee. If the person’s presence is merely permitted, the person is a licensee. “[A]n invitation is conduct which justifies others in believing that the possessor desires them to enter the land; permission is conduct justifying others in believing that the possessor is willing that they shall enter if they desire to do so.” Restatement (Second) of Torts § 332 cmt. b (1965).
¶30         Ms. Legro conceded in the district court that the record contains no evidence that the Robinsons affirmatively invited her to enter the property. And there is no evidence the Forest Service affirmatively invited Ms. Legro. Rather, the Forest Service merely permitted Ms. Legro’s entry on the property by granting the district a recreational permit for the bicycle race. Because the Forest Service merely permitted Ms. Legro’s entry, and because the Robinsons consented to entry by people who have the Forest Service’s consent, we conclude that, as to the Robinsons, Ms. Legro was neither a trespasser nor an invitee; she was a licensee.[8]

III. Working Dog Exemption
¶31         The Legros contend that the district court erred by concluding that the dog bite statute’s working dog exemption applies so as to insulate the Robinsons from strict liability. They argue that the Robinsons’ grazing permit does not confer on them a sufficient property interest such that the dogs were working “on the property of” the Robinsons at the time of the attack. Because we conclude that the Robinsons’ grazing permit does not confer a property interest in the subject land, we agree.

A. Standard of Review and Legal Framework
¶32         This issue requires us to construe the phrase “property of . . . the dog’s owner” in the working dog exemption to the dog bite statute, section 13-21-124(5)(f). We review de novo questions of statutory construction. Legro II, ¶10.
¶33         In interpreting a statute, our objective is to effectuate the eneral Assembly’s intent and purpose. Roup v. Commercial Research, LLC, 2015 CO 38, ¶8. Before resorting to canons of statutory construction, we look to the statute’s plain language and give the words their plain and ordinary meanings. Id. “We prefer a commonly accepted meaning over a strained or forced interpretation.” Id. If the statutory language is clear and unambiguous, we do not engage in further statutory analysis, and we apply the statute as written. Reno v. Marks, 2015 CO 33, ¶20.
¶34         Subject to specified exceptions, section 13-21-124(2) imposes trict liability on a dog owner whose dog causes serious bodily injury or death to a person who is lawfully on public or private property.

¶35         One such exception is known as the working dog exemption. It provides:
A dog owner shall not be liable to a person who suffers bodily injury, serious bodily injury, or death from being bitten by the dog . . . [w]hile the dog is working as a hunting dog, herding dog, farm or ranch dog, or predator control dog on the property of or under the control of the dog’s owner.
§ 13-21-124(5)(f).
¶36         As noted, in Legro II, the supreme court interpreted the working dog exemption to insulate a dog’s owner from strict liability where a person is bitten by a working dog while the dog is working (1) on the property of the dog owner or (2) under the control of the dog owner on either public or private property. Legro II, ¶22.
B. Relevant Facts
¶37         In analyzing the working dog exemption pursuant to the supreme court’s interpretation, the district court noted that the parties had conceded that Tiny and Pastor were not under the Robinsons’ control at the time of the attack on Ms. Legro.[9] Thus, the court analyzed only the exemption’s first prong, that is, whether the Robinsons’ grazing permit conferred on them a property interest such that the attack occurred while the dogs were working on the “property of” their owners.

¶38         The district court noted that pursuant to 36 C.F.R. § 222.3(b), grazing permits convey no right, title, or interest in the federal lands they cover. Even so, the court remarked that such regulation “has no effect on a permit’s classification for state purposes as ‘property of the dog owner.’” Rather, the court “analogously” applied the three-part test for determining whether possessory interests in tax-exempt properties (such as federal lands) may be assessed for state taxes. See Bd. of Cty. Comm’rs v. Vail Assocs., Inc., 19 P.3d 1263, 1279 (Colo. 2001) (The three factors are: “(1) an interest that provides a revenue-generating capability to the private owner independent of the government property owner; (2) the ability of the possessory interest owner to exclude others from making the same use of the interest; and (3) sufficient duration of the possessory interest to realize a private benefit therefrom.”).

¶39         The court determined that the three factors were satisfied, and it concluded that the Robinsons’ permit conveys a “‘possessory interest’ sufficient to bring the [d]og [b]ite statute into play.”
C. Analysis
1. Initial Matters
¶40         Initially, we reject the Legros’ argument that the district court mproperly considered the Robinsons’ trial brief because it was an untimely motion for summary judgment. The Robinsons’ trial brief was not a motion for summary judgment at all. The Robinsons did not request any relief in the trial brief, and they stated only that after trial they would ask the court to find in their favor as to the working dog exemption’s applicability. It appears that the district court sua sponte ruled on the issue of the working dog exemption’s applicability, presumably in response to the supreme court’s remand instructions in Legro II. Thus, the trial brief was not an untimely motion for summary judgment.

¶41         We also reject the Legros’ arguments that (1) the division in egro I “determined that the working dog exemption does not apply because the attack did not occur on ‘property of’ the [Robinsons]”; and (2) the supreme court in Legro II “specifically instructed the district court that the attack did not occur on ‘property of’ the [Robinsons].”
¶42         In Legro I, the division interpreted the phrase “on the property of or under the control of the dog’s owner” such that the working dog exemption applied where the dogs were working (1) on the property of the dog owner or (2) property under the control of the dog’s owner. The division construed the “property of . . . the dog’s owner” to mean something resembling fee simple ownership, and it concluded this prong was not satisfied because the Forest Service, not the Robinsons, was the record owner of the subject land.
¶43         In Legro II, the supreme court rejected the division’s construction of the phrase “on the property of or under the control of the dog’s owner.” It stated that the “property of” prong would be met in this case if the Robinsons’ grazing permit conferred a “property” interest. Id. at ¶24. It rejected the division’s construction of the phrase “property of . . . the dog’s owner” to require something resembling fee simple ownership. Id. at ¶¶23­24. Therefore, we do not rely on the Legro I division’s conclusion that the subject land was not the “property of” the Robinsons. In Legro II, the supreme court “express[ed] no opinion as to what constitutes ‘the property of . . . the dog’s owner’” because that issue was not within the purview of its grant of certiorari. Legro II, ¶22 (second alteration in original).

¶44         We therefore turn to whether the Robinsons’ grazing permit confers a property interest in the subject land such that the dogs were working on the Robinsons’ property when they attacked Ms. Legro.
2. The Term Grazing Permit Is a Revocable License and Confers No Property Interest
¶45         As relevant here, the working dog exemption applies if the attack occurred on the Robinsons’ property. To satisfy this requirement, the grazing permit must confer on the Robinsons a property interest in the subject land itself. Legro II, ¶24. As noted, the Robinsons’ right to graze sheep in this case involves only federal lands and emanates from a grazing permit issued to them by the Forest Service.
¶46         A grazing permit, such as the one at issue here, confers only a nonexclusive, revocable license to access federal lands for a limited purpose (here, grazing) and is subject to numerous terms and conditions; it “convey[s] no right, title, or interest held by the United States in any land or resources.” 36 C.F.R. § 222.3(b) (2015); see Pub. Lands Council, 529 U.S. at 731-34, 740-42; Legro II, ¶27 (Hobbs, J., concurring). The federal courts have construed a grazing permit as merely a revocable privilege that creates no property interest in the federal land it covers. See, e.g., Hage, 51 Fed. Cl. at 586 (“[G]razing permits are merely a license to use the land rather than an irrevocable right of the permit-holder.”).
¶47         Notwithstanding this unambiguous language, the Robinsons note that the Eagle County Assessor has classified the Robinsons’ permit as a taxable possessory interest in agricultural property. They argue that, under Colorado law, the three-part test set forth in Vail Associates applies to determine whether the Robinsons’ permit is “a significant incident of ownership,” and they contend the grazing permit satisfies that test.

¶48         That the subject land may qualify for state tax assessment is of no consequence in resolving the issue before us. As relevant here, the working dog exemption to the dog bite statute applies if the dogs were working on the Robinsons’ property. This requires that the Robinsons “have some cognizable property interest in the property in question.” Legro II, ¶29 (Hobbs, J., concurring) (emphasis added). That a permit interest covering federal lands might satisfy Colorado’s test for determining whether that interest is taxable does not somehow confer on the permit holder a property interest in the federal land in question. See Jonas, 80 Cal. Rptr. at 257.

¶49         The grazing permit does not confer on the Robinsons an interest in the subject land itself. We conclude that Tiny and Pastor were not working “on the property of . . . the dog’s owner” at the time of the attack on Ms. Legro. § 13-21-124(5)(f); see Jonas, 80 Cal. Rptr. at 256-57; see also Hubbard v. Brown, 785 P.2d 1183, 1190-91 (Cal. 1990) (Mosk, J., dissenting).
¶50         Accordingly, we conclude the district court erred by determining that the Robinsons’ permit creates a property interest sufficient to find that the dogs were working on the “property of . . . the dog’s owner.”

IV. Conclusion
¶51         We reverse the district court’s order and remand the case to the district court for further proceedings consistent with this opinion.
JUDGE TAUBMAN and JUDGE J. JONES concur.

 
[1] The working dog exemption insulates a dog’s owner from strict liability for injury inflicted by the dog if: the dog is working (1) on the property of the dog owner or (2) under the control of the dog owner on either public or private property. § 13-21-124(5)(f), C.R.S. 2015; Robinson v. Legro, 2014 CO 40, ¶22.
[2] Section 33-41-103(1)(b), C.R.S. 2015, provides that a landowner who, without charge, invites or permits any person to use his or her property for recreational purposes does not “[c]onfer upon such person the legal status of an invitee or licensee.”
[3] In the district court, Ms. Legro used the phrases “indirectly invite or permit” and “impliedly represent” when discussing whether the Robinsons took any overt acts to invite her on to the property. She used “expectation” when discussing whether the Robinsons could exclude the public from the property. In the interest of clarity, we use the legal term “implied consent” when discussing this latter issue.
[4] No party suggests that the PLA requires application of a different meaning of consent.
[5] “If two or more landowners are parties defendant to the action, the judge shall determine the application of this section to each such landowner.” § 13-21-115(4), C.R.S. 2015.
[6] While the parties appear to agree that the Robinson’s permit was issued under the Taylor Grazing Act, 43 U.S.C. §§ 315-16, we cannot confirm this from the record. Additionally, it appears as though the Forest Service issues grazing permits not under the Taylor Grazing Act, but pursuant to section 17 of the Granger-Thye Act of 1950, 16 U.S.C. § 580l (2012). In any event, the distinction does not affect our analysis because courts have held that grazing permits issued under either authority do not create a property interest. Compare Pub. Lands Council v. Babbitt, 529 U.S. 728, 731-34, 740-42 (2000) (grazing permits under the Taylor Grazing Act), with Hage v. United States, 51 Fed. Cl. 570, 586-87 & n.28 (2002) (expanding to Forest Service grazing permits).
[7] As noted, Ms. Legro argues only that she was an invitee. However, the Robinsons contend that Ms. Legro was: (1) not an invitee; (2) not a licensee; and (3) a trespasser. We therefore address whether Ms. Legro was a licensee.
[8] In their answer brief, the Robinsons assert that “[i]n the alternative, the CRUS applies[,]” and therefore they owed Ms. Legro only those duties owed to a trespasser under the PLA. Their four-sentence argument is both insufficient and conclusory, and we therefore do not address it. See Holley v. Huang, 284 P.3d 81, 87 (Colo. App. 2011) (Arguments that are “simply bald assertions of error that lack any meaningful explanation” are not properly presented for our review.). The Robinsons direct us to exhibits containing their district court briefs where this argument is “more specifically set forth.” We do not consider additional legal argument presented through incorporation of exhibits. Castillo v. Koppes-Conway, 148 P.3d 289, 291 (Colo. App. 2006).
[9] On appeal, in a footnote in their answer brief, the Robinsons dispute this finding, claiming that “no such confession or admission was ever made.” However, whether the dogs were under the Robinsons’ control at the time of the attack is not an issue that is before us on appeal because it is not within the purview of our grant of the Legros’ petition for interlocutory appeal. As to the dog bite statute, we granted the Legros’ petition only to determine whether the district court correctly determined that the Robinsons’ grazing permit is a sufficient property interest to render the property on which the incident occurred “the property of the dog’s owner.” See § 13-21-124(5)(f).