COLORADO COURT OF APPEALS                    2016COA114

Court of Appeals No. 15CA1755
Adams County District Court No. 13CV31426
Honorable Frederick M. Goodbee, Judge

_____

Ellyn Rucker,

Petitioner-Appellant,

v.

Federal National Mortgage Association and Heter and Company, Inc.,

Respondents-Appellees.

_____

ORDER AFFIRMED

Division A
Opinion by JUDGE FOX
Hawthorne and Berger, JJ., concur

Announced July 28, 2016

_____

The Frickey Law Firm, P.C., Howard Flicker, Eric B. Ballou, Lakewood,
Colorado, for Petitioner-Appellant

The Waltz Law Firm, Richard A. Waltz, Christopher R. Reeves, Denver,
Colorado, for Respondent-Appellee Federal National Mortgage Association

Law Offices of Skrabo & Atkins, Randee L. Stapp, Greenwood Village, Colorado,
for Respondent-Appellee Heter and Company, Inc.

¶ 1     In this C.A.R. 4.2 interlocutory appeal, plaintiff, Ellyn Rucker (Ellyn),[1] seeks review of the trial court orders holding that she was a trespasser under the Premises Liability Act (PLA).  She argues that the court erred in concluding that she was not an invitee under the PLA based on the "For Sale" sign at a house where she tripped and fell on the pathway to the house.  We grant Ellyn's petition and affirm the trial court's orders.

## I.  Background

¶ 2     In June 2011, Kristin Rucker (Kristin), Ellyn's daughter, was interested in moving to a new home in Denver.  Because of her financial circumstances, Kristin could not afford to buy a home.  Her father, David Rucker (David),[2] agreed that he would purchase a home, and Kristin would rent it from him.

¶ 3     On the morning of June 5, 2011, David submitted a written offer on a house in Adams County, Colorado.  The house was an unoccupied foreclosure acquisition owned by defendant, Federal National Mortgage Association (FNMA).  Defendant, Heter and Company, Inc. (Heter), was FNMA's listing real estate broker.

---

[1] For purposes of clarity, we refer to Ellyn, her daughter Kristin, and her former husband David Rucker by their first names.
[2] David and Ellyn divorced in 1978.

1

¶ 4     Heter had placed a "For Sale" sign in the house's front yard, with the listing realtor's name and phone number.  Heter also affixed a white sign to the front door of the house.  The sign stated "Warning" in English and Spanish in large print.  In smaller print, it stated, in both languages, "Theft, Trespassing or Vandalism Will Be Prosecuted to the Full Extent Of the Law."  "Warning" was the only word which could be read from the street in front of the house.[3]

¶ 5     On the afternoon of June 5, 2011, Kristin and Ellyn drove to the house.  A Heter realtor had shown Kristin the house before David submitted the offer, but Ellyn had not yet seen it.  Neither Kristin nor Ellyn alerted FNMA or Heter of their visit or requested permission to enter the property.

¶ 6     Kristin and Ellyn parked in the house's driveway.  After Ellyn exited the vehicle, she walked through the gravel flower beds and maneuvered around shrubs to look in the windows of the house.  Once Ellyn reached the front doorstep of the house, she began walking back to the driveway along the front pathway.  She lost her

---

[3] Our reference to the warning sign is provided for factual context only.

balance when she stepped on an uneven part of the sidewalk, fell, and suffered injuries.

¶ 7     Ellyn sued FNMA and Heter for the damages she suffered in her fall. She alleged that she was an invitee to the property under the PLA because the "For Sale" sign in the front yard constituted an "express or implied representation that the public is requested, expected, or intended to enter or remain on the premises." § 13-21-115(5)(a), C.R.S. 2015. She also argued that she was an invitee because she was "a person who enter[ed] or remain[ed] on the land of another to transact business in which the parties are mutually interested." *Id.*

¶ 8     In a written order on March 17, 2015, the trial court concluded that Ellyn was a trespasser. The court reasoned that the "For Sale" sign did not make Ellyn an invitee because she "never had the express consent of any 'land owner' to enter or remain on the Property" and the "'For Sale' sign did not qualify as an implied invitation to the public-at-large or more specifically to Ellyn to enter the subject property." The court did not address, in that order, Ellyn's second argument that she was an invitee because she was present with regard to a business transaction.

¶ 9     Upon Ellyn's request, the trial court certified its order for immediate appeal under C.A.R. 4.2.  A division of our court, concluding the case was not ripe for interlocutory appeal, dismissed the appeal without prejudice on June 5, 2015.  The division noted that Ellyn raised two issues (the business transaction and the "For Sale" sign issues) before the trial court and a third (the pathway issue) for the first time on appeal and that the trial court had only ruled on the "For Sale" sign issue.[4]

¶ 10    Before the trial court, Ellyn requested that the court reconsider her arguments concerning the business transaction and "For Sale" sign issues.  In the "For Sale" sign section of her pleading, she contended that a paved pathway to a residential property's front door created an express or implied representation that the public could enter the property.  On July 21, 2015, the trial court ruled that Ellyn was not an invitee and rejected her business transaction and "For Sale" sign arguments.

---

[4] Ellyn's pathway argument contends that a paved pathway to a residential property creates an implied representation that the public is requested, expected, or intended to enter or remain on the property.  The pathway, warning sign, and business invitee arguments are not before this court and nothing we decide is intended to affect the trial court's analysis of those issues.

¶ 11　　Then, Ellyn requested that the trial court rule on the pathway argument.  On August 28, 2015, the court ruled against Ellyn on that argument.

¶ 12　　Again, upon Ellyn's request, on October 5, 2015, the trial court certified the issues relating to the "For Sale" sign and the paved pathway for interlocutory appeal under C.A.R. 4.2.  However, the trial court declined to certify the business transaction argument for interlocutory appeal.

¶ 13　　In this appeal, Ellyn sought review of the business transaction and "For Sale" sign issues.  In an earlier order, we limited our interlocutory review to the "For Sale" sign issue because the trial court declined to certify the business transaction issue for interlocutory appeal.  We also concluded that we would not address the pathway issue because Ellyn did not seek review of it.

¶ 14　　We exercise our discretion pursuant to C.A.R. 4.2 to review Ellyn's contention that she was an invitee under PLA section 13-21-115(5)(a) because the "For Sale" sign constituted an "express or implied representation that the public is requested, expected, or intended to enter" the property.

5

## II.  The "For Sale" Sign Argument

¶ 15    Ellyn contends that she is an invitee because she entered the property in response to an implied representation by FNMA that the "For Sale" sign indicated that the public was requested, expected, or intended to enter.[5]  We disagree.

## A.  Standard of Review

¶ 16    The trial court's determination of the plaintiff's PLA classification is a mixed factual and legal question.  *Legro v. Robinson*, 2015 COA 183, ¶ 15.  We will disturb the trial court's findings of fact only if they are clearly erroneous and unsupported by the record.  *Id.*  We review de novo the court's application of the facts to the governing legal standards.  *Id.*

¶ 17    Here we must interpret section 13-21-115(5)(a).  Statutory interpretation presents a question of law that we review de novo.  *Corder v. Folds*, 2012 COA 174, ¶ 7.

---

[5] We do not address Ellyn's contention that she had a greater interest in being on the property than the public because David had made an offer on the house and Kristin was interested in living in it. This argument relates to the business transaction issue, which is not at issue here.

## B. Statutory Interpretation

¶ 18    In construing a statute, we ascertain and effectuate the

General Assembly's intent. *In re Miranda*, 2012 CO 69, ¶ 9. We

apply the plain meaning of the statutory language, give consistent

effect to all parts of a statute, and construe each provision in

harmony with the overall statutory design. *Id.* If the statutory

language is ambiguous, we employ additional tools of statutory

construction. *Id.* We avoid interpretations that would produce

absurd results. *Larrieu v. Best Buy Stores, L.P.*, 2013 CO 38, ¶ 12.

## C. Applicable Law

¶ 19    The PLA's central purpose is to determine private landowners'

liability to persons entering their land based on whether the entrant

is an invitee, a licensee, or a trespasser. § 13-21-115(1.5); *Legro*,

¶ 19. The PLA defines invitee, licensee, and trespasser as follows:

> (a) "Invitee" means a person who enters or
> remains on the land of another to transact
> business in which the parties are mutually
> interested or who enters or remains on such
> land in response to the landowner's express or
> implied representation that the public is
> requested, expected, or intended to enter or
> remain.

> (b) "Licensee" means a person who enters or
> remains on the land of another for the

7

licensee's own convenience or to advance his own interests, pursuant to the landowner's permission or consent. "Licensee" includes a social guest.

(c) "Trespasser" means a person who enters or remains on the land of another without the landowner's consent.

§ 13-21-115(5). The trial court determines the status of the plaintiff at the time of injury. *See generally* § 13-21-115(4); *Legro*, ¶ 15. A landowner's duty toward a plaintiff is determined by the category in which the court places the plaintiff. § 13-21-115(3).

¶ 20 As stated above, no Colorado case has addressed whether a "For Sale" sign creates an express or implied representation for a plaintiff to enter a landowner's property as an invitee.

## D. Analysis

¶ 21 We conclude that "For Sale" signs, standing alone, do not create an implied representation to strangers to enter the private property of others. Ellyn does not argue that she had an express invitation, unrelated to the signage, to enter the house. Therefore, we only determine to what extent, if any, Ellyn had an implied invitation to enter the property.

8

¶ 22     Ellyn argues that the trial court improperly required a landowner to provide an express representation of permission before a person can enter a property on which a "For Sale" sign is posted because the court required a person to first call the listing realtor to obtain permission to enter the property. We disagree. The trial court did not require that only a landowner's express representation would allow Ellyn to enter the property.[6]

¶ 23     Ellyn next argues that the trial court erred by not concluding that FNMA impliedly represented that she could enter the property. The trial court relied on *Wells v. Polland*, 708 A.2d 34 (Md. Ct. Spec. App. 1998), and *Coddington v. Federal National Mortgage Association*, No. 3:12-CV-00481-AC, 2013 WL 4084071 (D. Or. Aug. 9, 2013) (unpublished opinion), to hold that when a "For Sale" sign only contains the name and phone number of the listing realtor, the sign is not an implied representation for a person to enter the land.

---

[6] The court wrote that Ellyn did not have "express consent," but we discuss "express representation" following the language of section 13-21-115(5)(a), C.R.S. 2015. Ellyn, relying on *Corder v. Folds*, 2012 COA 174, ¶¶ 15-16, argues that FNMA gave its "consent" for her to be on the property. But, *Corder* does not provide guidance in interpreting the meaning of invitee here.

Rather, the trial court held the sign is merely an invitation to call the realtor.

¶ 24    Ellyn argues that we should not rely on *Wells* or *Coddington* because neither case interpreted a statute like the PLA.  Instead, she urges us to rely on *Singleton v. Charlebois Construction Co.*, 690 S.W.2d 845 (Mo. Ct. App. 1985), and *Holcomb v. Colonial Associates, L.L.C.*, 597 S.E.2d 710 (N.C. 2004).  We find *Wells* and *Coddington* persuasive.

¶ 25    While none of these cases deals with a statutory premises liability scheme, the common law definitions of "invitee" in *Wells* and *Coddington* are similar to Colorado's statutory definition of that term.  *Compare* § 13-21-115(5)(a), *with Wells*, 708 A.2d at 40 (explaining that a plaintiff can become an invitee through "implied invitation"), *and Coddington*, 2013 WL 4084071, at *6 (explaining that a plaintiff is an invitee if the landowner expressly or impliedly led a visitor to "believe that [the landowner] intended visitors to use the premises for the purpose that the person is pursuing and that the use was in accordance with the intention or design for which the premises were adapted or prepared") (citation omitted).  In contrast, neither *Singleton* nor *Holcomb* interprets invitee similarly.

10

*See Singleton*, 690 S.W.2d at 847 (discussing business invitees only); *Holcomb*, 597 S.E.2d at 716 (discussing lawful visitors only).

¶ 26     In *Wells*, 708 A.2d at 37-38, the defendant, the exclusive listing agent for the property, had placed a "For Sale" sign in the front window of a beach house.  The plaintiffs, who were interested in purchasing a beach house, decided to visit the property.  *Id.*  They did not contact anyone to seek permission or otherwise notify anyone of their intended visit.  *Id.*  After climbing a flight of stairs, they peered into the home through the windows, and as they turned to descend the stairs, the stairs collapsed, injuring them.  *Id.*

¶ 27     The *Wells* court applied an objective approach to its analysis of whether there was an implied invitation.  *Id.* at 40.  The court stated such approach "gains its vitality from such circumstances as custom, the habitual acquiescence of an owner, the apparent holding out of premises for a particular use by the public, or the general arrangement or design of the premises."  *Id.* (citing *Crown Cork & Seal Co. v. Kane*, 131 A.2d. 470, 473 (Md. 1957)).  The court distinguished mere acquiescence, which did not constitute an implied invitation, from direct or implied inducement, which did.

*Id.* In further rejecting that an implied invitation to enter the property existed, the court stated:

> It is unreasonable to suggest that every time an owner or real estate company places a 'sale' sign outside a house, the owner or company [is] 'inviting' people to come in . . . . To hold otherwise would mean that anytime an owner puts a property up for sale and posts a simple 'sale' sign in front of the property, the public-at-large would be free to enter the property at anytime [sic] of the day or night with the benefit of being an invitee rather than a trespasser.

*Id.* at 42.

¶ 28    We agree with this rationale.  Rucker's suggested construction would lead to unreasonable results not warranted by Colorado's PLA.  *See Asphalt Specialties, Co., Inc. v. City of Commerce City*, 218 P.3d 741, 746 (Colo. App. 2009) (we will not interpret the law in such a way that leads to an absurd or unreasonable result).

¶ 29    In *Coddington*, 2013 WL 4084071, at *8, the court rejected the plaintiff's argument that a "For Sale" sign served as an invitation for the public to enter the property as an invitee.  Rather, the court found that the posting of a "For Sale" sign provided notice to anyone who saw the sign that the property was for sale and provided information about whom to contact to schedule a viewing.  *Id.*  In

12

addition, the *Coddington* court rejected the plaintiff's argument that she had an implied invitation to enter the property absent evidence showing that the landowner customarily permitted potential buyers to enter the property without prior notice to the landowner, the plaintiff had knowledge of this custom, and the plaintiff relied on it when she entered the property. *Id.*

¶ 30 Ellyn argues we should determine whether all the circumstances objectively indicate that FNMA impliedly invited prospective buyers to enter the property. Under the reasoning in *Wells* and *Coddington,* we conclude there was no such implied representation.

¶ 31 As noted in the trial court order, nothing in the record indicates that FNMA had a custom of permitting people to enter the property unaccompanied by a realtor. In fact, Heter stated in depositions that prospective buyers were only allowed to enter properties by appointment and accompanied by a Heter realtor. Here, the posted "For Sale" sign, like that in *Wells,* simply indicated that the property was for sale and provided contact information for the listing agent. Other states that have addressed analogous scenarios conclude similarly. *See, e.g., Wilkie v. Randolph Tr. Co.,*

13

55 N.E.2d 466, 467-68 (Mass. 1944) ("For Sale" sign in window of property was not an invitation to enter onto the property, but instead was an invitation to contact the listing agent); *Mortg. Comm'n Servicing Corp. v. Brock*, 4 S.E.2d 669, 672 (Ga. Ct. App. 1939) (property listing advertisement in newspaper was not an implied invitation for a reader to inspect the property without being accompanied by a listing agent representative).

¶ 32 Ellyn argues that *Holcomb* and *Singleton* stand for the proposition that when a house is for sale, a prospective home buyer is not a trespasser as a matter of law. These cases do not support that proposition.

¶ 33 In *Singleton*, 690 S.W.2d at 846, the plaintiff was injured when he entered a partially constructed home that had a "For Sale" sign in the front yard. The sign in *Singleton*, as here, simply gave the real estate company's name and phone number. *Id.* No one else was present when the plaintiff entered the property. *Id.* However, there was testimony that the defendant had allowed prospective buyers to enter the property and the plaintiff was aware that other prospective buyers had visited the property unannounced and unaccompanied. *Id.* at 846-48. While the trial court did not

14

explicitly phrase it as such, this evidence established a custom which impliedly represented to plaintiff that he was invited to enter the property.

¶ 34     In *Holcomb*, 597 S.E.2d at 712-13, a company interested in buying property for redevelopment hired plaintiff to prepare a demolition estimate. When plaintiff visited the property to prepare the estimate, he fell and was injured when large dogs loose on the property lunged at him. *Id.* The *Holcomb* court concluded that plaintiff was not a trespasser, but a "lawful visitor," because the owner had "placed a 'For Sale' sign on its property and had allowed buyers and their agents to inspect the property." *Id.* at 715-16. While the trial court did not explicitly phrase it as such, this evidence established a custom which impliedly represented to plaintiff that he was invited to enter the property. Therefore, *Holcomb* is factually distinguishable. Here, there was no evidence that the buyers had any authority to inspect the premises without a real estate agent present. Moreover, the determination in *Holcomb* that plaintiff was a lawful visitor was premised on a jury verdict, whereas here we have a legal question presented.

15

¶ 35    Finally, we will not address Ellyn's contention that her status could have changed from trespasser to invitee or licensee once she was on the property because she raised this contention for the first time during oral argument. *See Bd. of Cty. Comm'rs v. City of Greenwood Village*, 30 P.3d 846, 849 (Colo. App. 2001).

¶ 36    Therefore, we conclude the trial court did not err in concluding that the "For Sale" sign did not constitute an implied representation to the public to enter or remain on the property, and, consequently, Ellyn was a trespasser.

## III.  Conclusion

¶ 37    The trial court's order is affirmed.

JUDGE HAWTHORNE and JUDGE BERGER concur.