24CA2146 Haug v Norick's 10-16-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA2146
Pueblo County District Court No. 23CV30406
Honorable Michelle Chostner, Judge

Josephine Haug,

Plaintiff-Appellant,

v.

Norick's Auto Service, Inc., a Colorado corporation, and Dennis W. Norick,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE WELLING
Gomez and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 16, 2025

Mullans, Piersel & Reed, P.C., Shannon Reed, Pueblo, Colorado, for Plaintiff-Appellant

White and Steele, PC, E. Catlynne Shadakofsky, Denver, Colorado, for Defendants-Appellees

¶ 1 Plaintiff, Josephine Haug, brought an action against defendants, Norick's Auto Service, Inc. (NAS), and Dennis W. Norick (collectively, defendants), under the Colorado Premises Liability Act (PLA), section 13-21-115, C.R.S. 2025. Haug appeals the district court's determination that she was a trespasser rather than an invitee under the PLA, *see* section 13-21-115(7), and the court's decision granting summary judgment in favor of defendants. We affirm.

## I. Background

### A. Haug's Accident

¶ 2 In August 2021, Haug took her car to NAS for service. The real property where NAS is located is owned by Norick. Haug had taken her car to NAS to be serviced in the past, and, according to Haug, she had never entered the building when having her car serviced by NAS; instead, she typically picked up her car from the NAS parking lot after hours. When picking up her car after hours in previous dealings, Haug would have an NAS employee lock her keys in the car, and she would access her serviced car with a spare set of keys.

¶ 3     As with her previous dealings with NAS, Haug didn't enter the building when taking her car for service in August 2021.  Instead, she pulled her car up to the NAS building and dropped her car and keys off.  After NAS finished servicing Haug's car, Norick called Haug to inform her that her car was ready to be picked up and Haug paid for the service over the phone via credit card.  Haug told Norick that she might not be able to pick up her car before NAS's closing time of 5:30 p.m.  Norick and Haug agreed that Norick would leave Haug's car outside with her keys locked inside for her to pick up using her spare key.

¶ 4     According to Haug's deposition testimony, she knew that NAS closed at 5:30 p.m. and that she didn't arrive at NAS to pick up her car until "[s]hortly after 5:30."  When she arrived, her car was parked outside the NAS building by a door with the number "418" above it.  Haug used a key to get inside her car, but upon getting in she noticed that there wasn't an invoice inside the car.  Haug "wanted to see [her] invoice" and thought someone was still in the NAS building because "there was a pickup truck parked right in front of [a closed] bay door" and it was "only a couple of minutes after 5:30 [p.m]."  Haug didn't try to call NAS about the invoice, nor

2

did she try to knock on the door. Instead, when Haug found the door below the "418" number unlocked, she entered the NAS building. According to Haug, there was no writing or signage on the door. Upon entering the building, Haug didn't see a counter, desk, computer, or cash register. Haug stood by the door for approximately one minute, and after "realiz[ing] that nobody was going to respond to [her]," "hollered for help." Haug saw that to the right of the door she had entered "and right inside of the bay door, there was an opening, and it was lit," which, to Haug, "indicated that . . . somebody must be over there." As Haug walked toward the opening, she "had to negotiate other vehicles" because there were cars tightly packed inside. While walking, Haug fell into a pit and suffered serious injuries.

## B.    Procedural History

¶ 5    Haug filed suit against NAS and Norick for negligence and premises liability under the PLA. Regarding her premises liability claim, Haug alleged that she was an invitee at the time she entered the NAS building. In their answer to the complaint, defendants asserted as an affirmative defense that Haug was a trespasser under the PLA when she fell.

¶ 6    Defendants later moved for a determination of law that Haug was a trespasser under the PLA at the time of her fall.  In her response, Haug requested that the district court rule that she was a business invitee at the time of her injury.  Defendants appended a portion of Haug's deposition transcript and some photos of the NAS building to their motion.  Haug appended her entire deposition transcript to her response.  Neither party requested an evidentiary hearing.

¶ 7    After reviewing the parties' briefing and appended documents, the district court entered a written order.  The court agreed with defendants and determined that Haug was an invitee "for the purpose of picking up her vehicle after hours from the [NAS] parking lot" but "was a trespasser once she entered the [NAS] shop at door number 418 after hours."  In reaching this conclusion, the court determined the following:

- The NAS building where Haug was injured "was not part of the land which she was permitted to enter after hours, and [Haug] sustained her injury within a part of the land she was not permitted to enter."

4

- "[Haug] and [Norick] expressly discussed the procedure [Haug] would use to pick up her vehicle if she arrived after 5:30 [p.m.]" and "[t]hat procedure was for [Haug] to pick up her vehicle from the parking lot and use her own spare keys to enter the vehicle."

- There was no express or implied consent for Haug to enter the NAS building after 5:30 p.m.

- "[T]here was no custom, usage, or conduct of [Haug] entering the [NAS] building after hours.  Instead, the custom was that [Haug] would pay for the repair in advance and pick up her vehicle from the parking lot using her spare set of keys."

- There was no evidence from which implied consent could be inferred and "consent [couldn't] be inferred by the back door being unlocked, given the facts and circumstances of [the] case."

- Haug "exceeded the scope of permission to enter the parking lot area when she entered the [NAS] building after hours.  The purpose of the after-hours visit was to

pick[ ]up the car from the parking lot, not to obtain a payment receipt."

- "[Haug] knew the nature of the activities occurring inside the repair shop, being car repairs, and that the area she entered was used by [d]efendant[s] to work on the cars."

¶ 8    The district court concluded that the determination of Haug's status as a trespasser at the time of her injury was dispositive of her PLA claim and entered summary judgment on that claim in favor of defendants. The court also entered summary judgment in favor of defendants on Haug's negligence claim because the "common law negligence claim is abrogated by the PLA and fails as a matter of law."[1]

## II.    Analysis

¶ 9    On appeal, Haug contends that the district court erred by (1) determining that she was a trespasser rather than an invitee at the time of her injury and (2) granting summary judgment in favor of defendants on her PLA claim. We address and reject both contentions.

---

[1] Haug doesn't challenge this determination regarding the negligence claim, so we won't address it or disturb it.

## A.    The Premises Liability Act

¶ 10    We first address Haug's contention that the district court erred when it determined that she was a trespasser under the PLA at the time of her injury.  We aren't persuaded that the district court erred.

### 1.    Legal Principles and Standard of Review

¶ 11    The PLA "preempts prior common law theories of liability, and [is] the sole codification of landowner duties in tort."  *Warembourg v. Excel Elec., Inc.*, 2020 COA 103, ¶ 36 (quoting *Vigil v. Franklin*, 103 P.3d 322, 328 (Colo. 2004)).  Under the PLA, a landowner's liability to a person injured on their land is based on the entrant's status as an invitee, licensee, or trespasser.  *See Lucero v. Ulvestad*, 2015 COA 98, ¶ 11; § 13-21-115(3), (4).  The PLA "outlines the respective duties that a landowner owes to trespassers, invitees, and licensees and provides that a breach of those duties may result in liability for damages caused."  *Warembourg*, ¶ 38 (quoting *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 574 (Colo. 2008)).  Under the PLA, "invitee," "licensee," and "trespasser" are defined as follows:

> (a) "Invitee" means a person who enters or remains on the land of another to transact business in which the parties are mutually

7

> interested or who enters or remains on such land in response to the landowner's express or implied representation that the public is requested, expected, or intended to enter or remain.
>
> . . . .
>
> (c) "Licensee" means a person who enters or remains on the land of another for the licensee's own convenience or to advance the licensee's own interests, pursuant to the landowner's permission or consent. "Licensee" includes a social guest.
>
> (d) "Trespasser" means a person who enters or remains on the land of another without the landowner's consent.

§ 13-21-115(7)(a), (c)-(d).

¶ 12     The district court determines "whether a plaintiff was an invitee, licensee, or trespasser at the time of injury." *Legro v. Robinson*, 2015 COA 183, ¶ 15.  Typically, we review this determination as a mixed question of law and fact, reviewing a court's findings of fact for clear error but reviewing the court's application of the facts to the governing legal standards de novo. *Id.*  But "where the controlling facts are not in dispute, we review de novo a district court's determination of a party's status under the PLA." *Willis v. Twin Shores Master Owner Ass'n*, 2025 COA 37, ¶ 8.

## 2.  Haug's Status

¶ 13    The district court determined that Haug was an invitee "for the purpose of picking up her vehicle after hours from [NAS]." Defendants don't appear to contest this determination and concede that "Haug was an invitee when she was in the parking lot." Instead, the primary dispute is whether Haug's status *changed* once she entered the NAS building.  The court determined that it did.

¶ 14    In analyzing whether this determination was correct, we first address the circumstances under which a person may be considered an invitee.  We then address when a person may be considered a trespasser.  (Because neither party contends that Haug was a licensee at the time of her injury, we don't address this issue.)

### a.  Invitee

¶ 15    The PLA provides two means by which a person entering land may be an invitee.  *See* 13-21-115(7)(a).  First, an entrant may be an invitee if the entrant "enters or remains on the land of another to transact business in which the parties are mutually interested."  *Id.* Second, an entrant may be an invitee if the entrant "enters or remains on [the land of another] in response to the landowner's

express or implied representation that the public is requested, expected, or intended to enter or remain." *Id.* The undisputed facts support the district court conclusion that Haug wasn't an invitee under either prong at the time of her injury.

### i. Transacting Business

¶ 16 We first address whether Haug was an invitee because of her business relationship with defendants.

¶ 17 The parties don't dispute that Haug engaged in a business transaction with NAS. Haug took her car to NAS for service, NAS completed the service, and Haug paid NAS for the completed service. Given these facts, the district court correctly determined that Haug was an invitee when picking up her vehicle. But an entrant's "status may change if he or she exceeds the scope of the landowner's invitation to access the property." *Warembourg*, ¶ 40; *see also Chapman v. Willey*, 134 P.3d 568, 569 (Colo. App. 2006) ("Although permitted to visit the motel for certain purposes, [the] plaintiff became a trespasser when he returned to the motel for the purpose of fighting.").

¶ 18 In this case, the scope of defendants' invitation to Haug was confined to the NAS parking lot. Indeed, the record establishes that

10

Haug informed Norick that she might arrive after hours and, therefore, agreed to a plan that would allow her to retrieve her car from the NAS parking lot without entering the NAS building. There is no indication that defendants gave Haug permission to enter the NAS building Instead, Haug had agreed to pick up her car from the parking lot rather than inside the NAS building, knew that NAS closed at 5:30 p.m., and had never entered the NAS building when having her car serviced there in the past. This supports the district court's conclusion that "[t]he building was not part of the land which [Haug] was permitted to enter after hours" and, thus, supports the district court's determination that Haug's status changed from invitee to trespasser once she entered the NAS building.

ii. Express or Implied Representation

¶ 19    Next, we address whether Haug was an invitee because of an express or implied representation by defendants.

¶ 20    Although Haug exceeded the scope of her permission to enter the NAS premises when she entered the NAS building, Haug could have remained an invitee if defendants expressly or impliedly represented that "the *public* [was] requested, expected, or intended

11

to enter" the NAS building. § 13-21-115(7)(a) (emphasis added). Haug suggests that she was permitted to enter the NAS building and was an invitee because business "closing times are typically subject to flexibility" and a "[c]losed business would be expected to be locked." Haug also notes that whether there were signs informing the public that the door she entered was "restricted" and for "employees only" remains disputed and was never resolved by the district court. But even construing this disputed fact in Haug's favor (i.e., assuming that such signage wasn't present on the date of her injury), the facts of this case don't support the conclusion that Haug was an invitee through an express or implied representation at the time she entered the NAS building.

¶ 21 To begin, there are no facts to support the conclusion that defendants expressly represented that the public could enter. But whether there was an implied representation is more difficult to ascertain.

¶ 22 We agree with Haug that posted business hours alone don't necessarily support the conclusion that a person who enters the premises outside of those hours is a trespasser. We also agree that defendants' failure to lock the door lends support to the conclusion

12

that defendants impliedly represented that the public was expected or intended to enter the NAS building. *Cf. Grizzell v. Hartman Enters., Inc.,* 68 P.3d 551, 553 (Colo. App. 2003) ("It is undisputed that the shop was not open for business, and the premises were locked to prevent entry by the general public."). But the particular facts of this case establish, and the district court correctly concluded, that there wasn't an implied representation that the public or Haug individually could enter the building at the door beneath the "418" numbering.

¶ 23    In its order on the determination of law, the district court found that the following facts weren't disputed:

- The door Haug entered was a "back door."

- When Haug entered, "no one was there to greet her, there were no cash registers, no computer or desk, and [Haug] did not see any person, whether a customer or employee."

- Haug called out and no one answered.

- Haug did not hear anyone working on cars.

- Haug had to "walk[] around stored cars."

¶ 24 The record supports the district court's determination that these facts aren't disputed. And these facts establish that defendants didn't impliedly represent a request, expectation, or intent that the public enter the NAS building through the door Haug used. We are further convinced that there was no representation to Haug specifically that she could enter the building because she *knew* that NAS was closed when she did so.

¶ 25 Because the undisputed facts support the legal conclusion that Haug wasn't an invitee at the time of her injury, the district court didn't err in making this determination.

### b. Trespasser

¶ 26 The district court concluded that at the time of her injury, Haug was a trespasser. Again, the PLA defines a trespasser as "a person who enters or remains on the land of another without the landowner's consent." § 13-21-115(7)(d). The district court determined, and the record supports, that it was "undisputed that there was no express consent for [Haug] to enter the [NAS] shop." Indeed, Haug's own statements support this: Haug said that she and Norick agreed that she would pick up her car in the parking lot.

14

There was no evidence presented that Norick told Haug she could enter the NAS building.

¶ 27 But consent also includes implied consent and "a landowner may consent to entry, absent express words, by his or her course of conduct." *Corder v. Folds*, 2012 COA 174, ¶¶ 17, 19. The district court determined, however, that implied consent couldn't be inferred because (1) the "custom" between Haug and defendants was that Haug "would pay for the repair in advance and pick up her vehicle from the parking lot using her spare set of keys"; (2) Haug did in fact pay for the repair in advance on the date of her injury and "was able to accomplish the agreed upon entry to pick up her vehicle without entering the building"; and (3) "consent cannot be inferred by the back door being unlocked, given the facts and circumstances of th[e] case."

¶ 28 The record supports these determinations. Haug said that she had done business with NAS before and that NAS employees had always left her car outside the building with her keys locked inside. This testimony demonstrates a course of conduct between Haug and NAS. Haug also said that on the day of her injury, in line with the established course of conduct, NAS employees locked her keys

inside of her car in the parking lot and that she was able to access her car with her spare keys. Haug further testified that she had never been inside the NAS building before and that she had entered through the door that she did because it was the door nearest her car (not because she thought it to be the main business entrance). That Haug knew NAS was closed also supports a determination that she didn't have consent to enter the building.

¶ 29 Because Haug didn't have consent to enter the building and the record supports the court's determination that Haug wasn't an invitee, the district court didn't err when it determined that she became a trespasser once inside the NAS building.

### B. Summary Judgment

¶ 30 Finally, we address whether the district court properly disposed of Haug's PLA claim on summary judgment. Because the district court correctly determined that Haug was a trespasser, the court didn't err in granting summary judgment.

¶ 31 "Summary judgment is appropriate only if the pleadings, affidavits, depositions, or admissions establish that there is no genuine issue of material fact and that the moving party is entitled

to judgment as a matter of law." *Corder*, ¶ 5. We review a district court's order granting summary judgment de novo. *Id.*

¶ 32    If the court determined an entrant was a trespasser, the entrant "may only recover damages willfully or deliberately caused by the landowner." § 13-21-115(4)(a). Because Haug was a trespasser and doesn't contend that defendants willfully or deliberately caused her damages, the district court didn't err by granting summary judgment in favor of defendants on Haug's PLA claim.

## III.   Disposition

¶ 33    The judgment is affirmed.

JUDGE GOMEZ and JUDGE SULLIVAN concur.

17